MARCH 12,}  CHAMBERLAIN v. THE N. H. FIRE INS. CO.        55   249
   1875.  }                                                    . 71  267

*Insurance—Condition—Notice—Mistake—Construction of sec. 2, ch. 157, Gen. Stats.—Breach of contract—Who may sue.*

The person to sue for the breach of a simple contract is the person from whom the consideration for the promise moves.

The municipal laws of a state are necessarily referred to in all contracts made within the state subsequent to the enactment of those laws, and must govern and control them in all matters affecting their validity, construction, or discharge.

The defendant corporation, a joint-stock insurance company, issued a policy insuring W. against loss or damage by fire to the amount of one thousand dollars on his house, &c.; "in case of loss, insurance to be paid to" C., who held a mortgage upon the premises to secure the payment of six hundred dollars. The insurance was obtained by C. with the consent of W. C. paid the premium, and W. had no negotiations with the company. *Held*, that C. was the proper party to maintain an action upon the policy, to recover not only to the extent of his own but also the interest of W. secured thereby.

The policy contained a condition that it should be void if the premises should become vacated by the removal of the owner or occupant, without immediate notice to the company and consent indorsed on the policy. The buildings were occupied by the owner at the date of the policy, and continued to be thus occupied nearly a year, when they were vacated, and remained unoccupied until their destruction by fire nine months later. They were not destroyed by reason of exposure to any risk which it was the object of the condition in the policy to guard against. W. gave no notice to the company of the vacating of the buildings, because, not having obtained the insurance nor received the policy, he was ignorant of the condition therein; and C. gave no notice, because (without fault or negligence) he was unaware that W. had removed. *Held*, the failure to give notice was a "mistake," within the intendment of the statute, which provides that "no policy shall be avoided by reason of any mistake or misrepresentation, unless it appears to h*ve been intentionally and fraudulently made; but the party insuring, in any action brought against them on such policy, may show the facts, and the jury shall reduce the amount for which such party would otherwise be liable as much in proportion as the premium ought to have been increased if no mistake or misrepresentation had occurred," LADD, J., dissenting.

*Held*, also, that notwithstanding the mistake, and notwithstanding the fact that the buildings were not destroyed by reason of exposure to the risks of non-occupation, still, inasmuch as the company might have refused

to insure the property, or might lawfully have charged an increased price for the continuance of the insurance if they had known of the vacating of the buildings, the amount of its liability must be diminished, as indicated by the statute.

ASSUMPSIT, on a policy of insurance issued by the defendants, insuring " John M. White against loss or damage by fire, to the amount of $1000, on his house, shed, and barn in High Bridge village, New Ipswich ; in case of loss, insurance to be paid to James L. Chamberlain." Case tried by the court.

The defence was,—(1) that the action could not be maintained in the name of the plaintiff; (2) that the policy became void by reason of the following condition : " if the premises hereby insured become vacated by the removal of the owner or occupant, without immediate notice to the company and consent indorsed hereon, * * this policy shall be void." The policy was dated July 15, 1870. The plaintiff then owning a note and mortgage for $600 given by White, with White's consent obtained the insurance on buildings owned by White, who lived in and occupied them. June 1, 1871, White, by removal, not intending to return, vacated the premises, and they remained unoccupied till destroyed by fire, Feb. 26, 1872. No notice was given of the premises being vacated, and the plaintiff and the defendants were not aware, till after the fire, that they were vacated. The buildings were burned by a fire originating in a factory, and communicating through other occupied buildings, and were not destroyed by reason of exposure to any risk which it was the object of the conditions in the policy to guard against. The defendants, being informed, in September, 1872, that the buildings had been vacated before the fire, raised that objection. This objection was not raised in the communications between the parties soon after the fire, because the defendants were not then aware that the buildings had been vacated before the fire. White gave no notice, because he did not obtain the insurance, had no interest in it, and was ignorant of the condition in the policy; and the plaintiff gave no notice, because he did not know that White had moved. Upon these facts judgment is to be rendered.

Case reserved.

*Stevens & Parker*, for the plaintiff.

I. Can this action be maintained by the plaintiff? As mortgagee, the plaintiff had an insurable interest in the property. *Goodall* v. *New England Fire Ins. Co.*, 25 N. H. 187; *Smith* v. *Packard*, 19 N. H. 575 ; *Sanders* v. *Hillsborough Ins. Co.*, 44 N. H. 238 ; *Barnes* v. *Union M. F. Ins. Co.*, 45 N. H. 28, and cases there cited. The defendants are a " stock " company, not " mutual "—Laws of 1869, ch. 97 ; and many decisions found in the books are not applicable to a corporation of this character. This is especially true so far as membership is involved. Here the insured are not " members " of the company. The membership consists of the shareholders owning the stock. The policy in this

case is a simple contract, by which the corporation insures the property and agrees to pay the loss to the plaintiff. The plaintiff is then the original contracting party, or an assignee. In either case he can maintain his action. He is the original contracting party. The case shows this: "White did not obtain the insurance, had no interest in it, and was ignorant of the conditions in the policy." "The plaintiff, then owning a note and mortgage for $600 given by White, with White's consent obtained the insurance." The plaintiff applied for it; he paid the premium; at his request the company issued the policy, and in it agreed to pay the loss to him. This was a promise to pay to the person from whom the consideration moved. By this action the legal as well as equitable interest in the contract vested in the plaintiff. There were no other contracting parties. The legal interest in a simple contract is in him from whom the consideration moves. *Warren v. Batchelder,* 15 N. H. 129; *Smith v. Mudgett,* 20 N. H. 527, 528; *French v. Rogers,* 16 N. H. 177; 5 N. H. 244. A payment to the plaintiff would be a bar to a recovery by White, because by the terms the payment was to be so made, and White assented to it. Although the equitable interest of the assignee will be protected, yet ordinarily and at common law he cannot maintain a suit upon the original policy in his own name, but must sue in the name of the assignor. But if the insurer, upon notice of the assignment, promises the assignee to pay the insurance to him in case of loss, the assignee can, upon proper averments, maintain a suit upon the policy in his own name. *Pierce v. Ins. Co.,* 50 N. H. 297; *Foster v. Ins. Co.,* 2 Gray 216. There seems to be no difference in principle between the case cited and the case at bar, and the practical difference consists in this,—that in the former, the promise to pay was made upon a good consideration, subsequent to the issuing of the policy; and in the latter, it was made upon an equally valid consideration at the time of issuing the policy.

The case is also within the spirit of the act of 1869, ch. 30, sec. 1, which provides that the " party in interest may bring his action in the name of the assignor or assignee, as he may elect," though we contend that without this statute provision an action will lie on the express promise of the defendant to pay the amount in case of loss to the plaintiff. But the purpose of that statute being to abrogate the rule of the common law above stated, and thus obviate the objection often taken by mutual insurance companies to the maintenance of the action on the ground that such plaintiffs were not members of the company, a holding by the court which permits the plaintiff in this case to maintain his action would be in strict accord with the course of legislation in this state, and bears also upon the construction of the act of 1867, hereafter referred to. The undertaking in the policy to pay to Chamberlain was an equitable assignment of the prospective funds, and the action should be in the name of the assignee. *Pierce v. Ins. Co.,* 50 N. H. 297; *Morris v. Co.,* 25 N. H. 22; *Rollins v. Co.,* 25 N. H. 200; *Goodall v. Co.,* 25 N. H. 169; *Sanders v. Co.,* 44 N. H. 243, and cases cited; *Barnes v. Co.,* 45 N. H. 21.

II. The defendants have undertaken in their policy to make the existence of their liability dependent on a condition subsequent, a violation of which is to avoid the policy in their favor. It is drawn with some adroitness, and inserted in connection with other provisions almost as dangerous to the insured as the element from which the policy is ostensibly designed to protect his interests. "If the premises hereby insured become vacated by the removal of the owner or occupant without immediate notice to the company and consent indorsed hereon * * this policy shall be void." Such conditions are odious, and are not to be favored in law. *Emerson* v. *Simpson*, 43 N. H. 475; *Page* v. *Palmer*, 48 N. H. 385. This condition ought not to be construed to annul the contract or avoid the policy, because it is ambiguous in its terms. 1. "Immediate" notice shall be given. The term "immediate" is not one of limited and certain significance. It means nothing more than *reasonable* in point of time, and may well be construed to mean and to be restricted to "immediate," "reasonable," or "timely" notice after the fact of removal becomes known to the insured. In this case, the insured did not know that the premises were vacated until after they were burned. 2. It is uncertain, because it does not state any time in which the policy is to become void. The policy is not void upon the premises becoming vacated, for "immediate" contemplates some lapse of time. At most, it is voidable only upon notice by the company to the insured, after notice to the company of its being vacated. After notice given by the insured, the company may and must have time to act upon the matter, and consent or dissent, and in the meantime the policy remains in force. It cannot be said to be void then until the vacating, the notice by the insured, the dissent of the company, and notice thereof to the insured have occurred. It is nothing more than just, in construing so harsh a condition, and one which is to work a forfeiture of the policy, to hold that all these facts and circumstances should be shown to have happened before holding the policy forfeited upon mere technical omissions. It would be unjust to hold any other construction as to a mortgagee not in possession. It would be proper to hold the policy valid until the defendants have elected to avoid it by the corporate act of dissent. If the defendant company intended that the policy should become void upon neglect of the insured to notify that the premises had become vacant without any act of dissent on their part, and merely by lapse of time, they should have inserted in the condition and fixed upon some time in which the notice should be given by the insured,—such for instance as was commonly written in the policies of the mutual companies, that when property insured was alienated, the policy should be void if notice was not given and the consent of the company obtained in thirty days. *Barnes* v. *Company*, 45 N. H. 21.

III. The contract being original between the defendant company and the plaintiff, no act or knowledge of White can injuriously affect the rights of the plaintiff. "No act of the person in whose name the policy was first issued, done subsequent to the assignment and its approval

by the company, or of any other party having an interest in the property insured, acting without the concurrence of the plaintiff, can in any way affect or impair the rights of the plaintiff under the policy." *Foster* v. *Ins. Co.*, 2 Gray 220.

IV. Whatever doubts may arise as to the foregoing propositions, it would seem that the provisions of sec. 2, ch. 157, Gen. Stats., furnish sufficient ground, in connection with the finding of the court, upon which the policy should be held valid and the action maintained against the insurers. The section provides that " no policy of insurance shall be avoided by reason of any mistake or misrepresentation, unless it appears to have been intentionally and fraudulently made. But the party insuring in any action brought against them on such policy may show the facts, and the jury shall reduce the amount for which such party would otherwise be liable as much in proportion as the premium ought to have been increased if no mistake or misrepresentation had been made."

The evident purpose and intent of these provisions are, to avoid and brush away the technicalities so frequently resorted to by insurance companies to embarass and defeat the just and equitable claims of the insured, and at the same time to guard the insurers against any loss properly referable to an increased risk arising from such mistake or misrepresentation. The object and policy of the law, and its application to cases of the character presented here, have been recently discussed so much at length and so interestingly in the case of *DeLancey* v. *Insurance Co.*, 52 N. H. 581, that we need only refer to that case in this connection. And it only remains for us to inquire whether ignorance of the fact on the part of the plaintiff that the premises were vacated, and the consequent neglect to give the company notice, was a " mistake " which the statute was intended to relieve against.

We contend that in the absence of a distinct waiver of the provisions of the statute in terms, inserted in the policy, all provisions and conditions, the violation or non-performance of which avoids the policy on technical grounds only, are to be taken out of the category of forfeitures and penalties in law and submitted to the jury, to be passed upon by them upon substantial and meritorious grounds. And we are inclined to go further, and maintain that any condition in a contract which seeks to abrogate the provisions of this statute, or is in palpable violation of them, must be held to be inoperative and void, upon the broad ground of public policy, and a flagrant attempt to contravenc a public statute. By the provisions of this statute, a breach of the agreement or condition can be fully compensated by the *pro rata* provision ; and in order to give the defendants the full benefit of any damage occasioned by the breach, it is unnecessary to hold the policy void. The defendants receive and hold the full consideration paid by the plaintiff, and it would be unjust, it seems to us, in view of the spirit of our legislation and the equities of the case, to hold that the defendants may retain the whole consideration and not be compelled to pay any part of the loss. The case shows a " mistake " on the part of the plaintiff,

such as is contemplated and intended to be relieved by the statute; that mistake consisted in not notifying and obtaining the consent of the company, and it arose and was occasioned by the fact that the plaintiff was not aware that the premises had been vacated. White "lived in and occupied" the premises at the time the policy was issued. He moved out afterwards, without notice to the plaintiff. The plaintiff did not know of his removal. He supposed White still in possession. This was the plaintiff's mistake of fact, an honest mistake, and one within the meaning of the statute. Bouv. Law Dict., Ignorance of Fact, 599; *id.* Mistake, vol. 2, 178. It may be contended that the mistake or misrepresentation intended by the statute must be one occurring prior to or at the time of the issuing of the policy. But this is too narrow a construction, and we contend that it may be one happening during the life of the policy, and referring to all its substantial conditions, limitations, or prohibitions, as well as to facts arising before the issuing of the policy. It would properly include a mistake or misrepresentation occurring in the assignment or transfer of the policy or of the property insured, and this construction is especially proper in relation to policies issued by stock companies, where, as we understand, no formal or written application is made or signed.

In aid of our view it may also be observed that other sections of chapter 157, following the second section, take the matter of notice, the determination of the loss, the bringing of the suit, &c., out of the conditions of the private contract or policy, and regulate them by general statute. And where the stipulations of the policy undertake to restrain, modify, restrict, or control the provisions of the statute, they must give way. Suppose the condition which we are considering to have been honestly inserted by the defendants, in order to allow the company to raise its premium as a condition to its assent to the premises being vacated: by the construction we contend for, the defendants would receive on the trial of the case the full benefit which they could have obtained upon notice.

*Briggs* v. *Huse*, for the defendants.

There are two questions raised in this case for the consideration of the court. First—Was the suit properly brought in Chamberlain's name? Second—Had the policy become void by reason of the violation of this express condition therein,—"If the premises hereby insured become vacated by removal of the owner or occupant, without immediate notice to the company and consent indorsed hereon, this policy shall become void"?

I. The contract in terms was between White and the company. The insurance was upon White's property, and the loss, if any, for which the company agreed to pay, was the loss sustained by White upon his own property. There had been no assignment of this policy to Chamberlain, approved, assented to, and ratified by the company, of such a character as to give Chamberlain the right to sue in his own name.

It is a well settled principle of law that the assignee of a contract (negotiable instruments excepted) can maintain no action upon it, excepting in the name of the assignor, or original contracting party; and assignees of insurance policies are no exception to this principle. *Rollins* v. *Columbian Ins. Co.*, 25 N. H. 200; *Shepard* v. *Union Mutual Ins. Co.*, 38 N. H. 237; *Dix* v. *Cobb*, 4 Mass. 511; *Wheeler* v. *Wheeler*, 9 Cow. 34; *Currier* v. *Hodgdon*, 3 N. H. 83; *Thompson* v. *Emery*, 27 N. H. 273; *Blanchard* v. *Ins. Co.*, 33 N. H. 9; *Folsom* v. *Ins. Co.*, 30 N. H. 231.

Where a policy provides that the loss, if any, is payable to another, —a mortgagee, for example,—instead of the assured, it is merely a designation of the person to whom it is to be paid, and is not an assignment of the policy. Hence, it is the damage sustained by the party insured, and not by the party appointed to receive payment, that is recoverable from the insurer. Flanders on Insurance 441; *Grosvenor* v. *Atlantic Ins. Co.*, 17 N. Y. 391; *Frink* v. *Hampden Ins. Co.*, 45 Barb. 384; *Loring* v. *Manf. Ins. Co.*, 8 Gray 28.

The only ground upon which it can be claimed that this action can be maintained in Chamberlain's name is founded on this clause in the policy: "In case of loss, insurance to be paid to James L. Chamberlain." It cannot be contended that this constitutes an assignment of all White's interest in the policy, and that it has been assented to and ratified by the company in such a way as to give Chamberlain a right to sue in his own name. It operates simply as security for the amount of his mortgage debt, or as an order on the company to pay to him, in case of loss, whatever may be found due from the company to White, to the extent of his mortgage debt, and no more. Beyond that Chamberlain had no interest in the property insured, and upon the payment of that his interest in the property and in the policy would cease. Now, if it is to be held that this suit can be maintained by Chamberlain, and he recover the amount due on the mortgage, then the company can be subjected to another suit, in the name of White, for the balance remaining after the payment of the mortgage debt to Chamberlain. Suppose, for illustration, there had been ten mortgages upon this property, of $100 each, and the policy of $1,000 had been made payable to each of the mortgagees to the extent of their respective claims, in the order in which the mortgages were made: is it to be contended that each mortgagee may have a separate suit upon one and the same policy? If so, there would be no end to suits which, under such circumstances, might be brought upon one contract. We believe the court will hesitate before making a decision which will lead to a multiplicity of suits, when one suit between the company and the party to whom the policy was issued will as well subserve the ends of justice, secure and protect the rights of all.

II. There was an express condition in the policy in suit, that "if the premises hereby insured become vacated by removal of the owner or occupant, without immediate notice to the company and consent. indorsed hereon, * * this policy shall be void."

This condition was violated in every essential particular, and the case so finds. The premises were occupied by White, the owner at the date of the policy, July 15, 1870, and he continued to occupy them until June 1, 1871, at which time he vacated them with no intention of returning, and they remained vacant and unoccupied from that time up to the time of the fire, February 26, 1872, a period of nearly nine months. During all this time no notice was given to the company, its officers, or agents. They had no knowledge from any source that the premises were vacated and unoccupied, and no consent was ever indorsed upon the policy, as the condition required. We contend that by the terms of the policy it became void, and there is nothing due upon it, either to White or Chamberlain. The law in relation to warranties and express conditions in insurance policies, as well as other contracts, is well settled. "An express warranty is an agreement, expressed in the policy, whereby the assured stipulates that certain facts relating to the risk are or shall be true, or certain acts relating to the same subject have been or shall be done. It is not requisite that the circumstance or act warranted should be material to the risk. In this respect an express warranty is distinguished from a representation. An express warranty and express conditions stand upon the same ground, and have the same effect; they must be strictly and even literally complied with." "A non-compliance, though it occasions no damage, and does not change or increase the risk, has the effect of discharging the insurers from their liability." See 1 Phillips on Insurance 346 to 355, and cases cited.

A condition in a fire no less than a marine policy, not complied with, defeats the policy, whether it be material to the risk or not, and whether the non-compliance be without the act or privity of the assured. Phillips on Insurance 410; 3 Kent's Com. 373; *Jefferson Ins. Co.* v. *Cotheal,* 7 Wend. 72; Flanders on Insurance 498, 500; *Lyndon* v. *Farmers Ins. and Loan Co.,* 13 Wend. 92; *Duncan* v. *The Sun Fire Ins. Co.,* 6 Wend. 488; *Wood* v. *The Hartford Fire Ins. Co.,* 13 Conn. 533; *Kerr* v. *South St. Louis M. F. Ins. Co.,* 40 Mo. 19; *Delonguemore* v. *Tradesmen's Ins. Co.,* 2 Hall 587. From these authorities the doctrine is well established that a non-compliance with an express condition of a policy renders it void, and discharges the insurer from all liability therein.

It has been recognized in numerous cases, and companies have been discharged from liability for the violation of conditions substantially like the one in the policy in suit. "An insurer may prescribe any condition to his undertaking that he pleases; and if he make a condition that a constant watch shall be kept on the premises, otherwise the policy shall be void, if the assured fails to keep a watch the policy ceases, and no question can be made whether compliance affected the risk in any way." Phill. on Ins., before cited; *Parker* v. *Bridgeport Ins. Co.,* 10 Gray 302; *Baltimore Fire Ins. Co.* v. *Loney,* 20 Md. "Where notice is required to be given if insured personally vacate the premises, such notice must be given to a properly authorized agent, and it is immaterial that the assured is ignorant of the agent's want of

authority." Fl. on Ins. 271 ; *Harrison* v. *City Fire Ins. Co.*, 9 Allen 231 ; *Western* v. *City Fire Ins. Co.*, 15 Wis. 138.

In *Sikes* v. *The Perry County Mutual Fire Ins. Co.*, the policy provided against any alteration, addition, or changes of occupancy or use, without notice to the company. Failure to give notice avoided the policy from the commencement of such alteration or change. 10 Casey 79.

In *Evans* v. *Trimountain Mutual Fire Ins. Co.*, the policy prohibited alterations without previous written consent of the company, and the court held such consent must be obtained, and in the precise form prescribed by the contract, otherwise the policy became void. 9 Allen 329. "A clause, too, may be inserted in a policy, binding the insured to have the premises occupied the entire year," &c. If permitted to become unoccupied, the insurance would be defeated. *Campbell* v. *Charter Oak Fire & Marine Ins. Co.*, 10 Allen 213.

A stipulation, " If the buildings remain unoccupied over thirty days without notice, the policy shall be void," is not complied with by tools remaining in it, and by its being visited daily for examination, and its violation avoids the policy. Fl. on Ins. 270 ; *Keith* v. *Quincy Mutual Fire Ins. Co.*, 10 Allen 228.

We might continue the citation of particular cases where the principle we contend for has been recognized and adopted by judicial tribunals, but it is unnecessary. We think, from what has been shown, it is well settled that the violation of the condition in this policy rendered the same void, and that there is no foundation either in law or equity for the maintenance of this suit.

*FOSTER, C. J., C. C. By the terms of the policy the defendants insured John M. White against loss or damage on his buildings, and agreed to pay the amount of the insurance, in case of loss, to the plaintiff. The plaintiff had an insurable interest in the property as White's mortgagee to the extent of $600. It is said that White had no interest in the insurance ; but this is evidently stated inadvertently, for if, in the circumstances of the case, the defendants are liable to pay the full amount of the insurance,—$1,000,—then it is manifest that White has an interest to the extent of the surplus after the discharge of the plaintiff's indebtedness to him ; and if this plaintiff can recover the whole sum insured in this action, he will recover and hold that surplus as the trustee of White. See *Barnes* v. *U. M. F. Ins. Co.*, 45 N. H. 21, 28.

The insurance was obtained with White's consent, but he had really nothing to do with the transaction, and was ignorant of the terms and conditions of the policy. The plaintiff paid the premium, and was in fact the only party contracting with the company.

But the first ground of defence to the plaintiff's claim is, that the action cannot be maintained in his name.

---

*SMITH, J., did not sit.

Probably no principle in the law of insurance is more clearly settled in this state than that by the rules of the common law, where a policy issued by a mutual insurance company has been assigned, the action upon it must be brought in the name of the assignor, although the assignment is assented to and the policy is made payable in case of loss to a third party, unless, by giving a new premium note, the assignee becomes substituted for the insured and a member of the company, in which case the action must be brought in the name of the latter. *Nevins* v. *The Rockingham Fire Ins. Co.*, 25 N. H. 22 ; *Rollins* v. *The Columbian Fire Ins. Co.*, 25 N. H. 200 ; *Folsom* v. *The Belknap Co. M. F. Ins. Co.*, 30 N. H. 231 ; *Blanchard* v. *Atlantic M. F. Ins. Co.*, 33 N. H. 9 ; *Barnes* v. *Union M. F. Ins. Co.*, 45 N. H. 24 ; *Pierce* v. *Nashua Fire Ins. Co.*, 50 N. H. 297 ; *Granger* v. *Howard Ins. Co.*, 5 Wend. 200 ; *Conover* v. *Mutual Fire Ins. Co.*, 3 Den. 254 ; *Nevins* v. *Rockingham Fire Ins. Co.*, before cited.     And it makes no difference that by the express terms of the policy the insurance, in case of loss, is to be paid to the assignee or to a third person. *Nevins* v. *Rockingham Fire Ins. Co.*, *Blanchard* v. *Atlantic M. F. Ins. Co.*, and *Barnes* v. *Union M. F. Ins. Co.*, before cited.

The rule is otherwise in some jurisdictions—May on Insurance, secs. 446, 447, and cases cited in notes ; but it seems to be so firmly established in this state, in accordance with the general rule of the common law applicable to personal contracts of this character, that it would seem inexpedient now to adopt a different rule.     Unless this may, in some sort, be regarded as substantially the case of an assignment, chapter 30 of the Laws of 1869 is not applicable to this case.     That chapter relates solely to policies which have been assigned.

Prior to that statute it was understood that where, by the terms of the charter or by-laws of a mutual insurance company, provision is made for a transfer of the policy, upon mortgage or sale of the property insured, giving to the assignee all the rights and privileges before possessed by the assignor, a suit upon the policy must be in the name of the assignee.     There was privity of contract in such a case, because the company expressly agreed that the assignee should stand in the place of the assignor, possessed of all his rights and privileges.     The act of 1869 provided that in such a case the party in interest might bring his action either in the name of the assignor or assignee ; but that statute cannot be held to apply to a case like the present, notwithstanding it may seem to be within the spirit of the act.     *Loring* v. *Manf. Ins. Co.*, 8 Gray 28.

In May on Insurance, sec. 446, it is said,—" The general rule applicable to personal contracts is, that, if assigned, the action for a breach must be brought in the name of the assignor, except where the defendant has promised the assignee to respond to him.     But a consent to the assignment is generally held to be the equivalent of this promise. And so, if the policy is made 'payable in case of loss' to a third party." Numerous decisions in the courts of Maine, Massachusetts, and New York are cited in support of this proposition.     But, as we have seen, the

policy of our own courts is different, prohibiting the maintenance of an action by the assignee, although the assignment is assented to and the policy is made payable in case of loss to a third party, unless, by the giving a new premium note, the assignee becomes substituted for the assured, and a member of the company.   All the New Hampshire cases before cited, it will be observed, relate to cases of mutual companies; and in every one of them mutuality of membership seems to be made the test of capacity to sue.   The anomalous doctrine is maintained, that the plaintiff has no right of action except in a certain sense against himself, that is, against the association of which he is himself a member.

This to my mind is very unsatisfactory.   I fail to see how it can make any difference in the rights of these parties that the defendants here are a stock company and not a mutual company.   The right of a party to recover should depend, not at all upon his association with the defendants as a member of their corporation, but, independently of that, upon his contract.

The leading principle of mutual insurance companies is, that each person whose property is insured becomes a corporator, or a member of the company, and, by reason of such association, is bound to take notice of, and is placed under obligation to observe, its by-laws.   Angell on Fire and Life Insurance, secs. 10, 146.   But a policy of insurance is a contract, and is to be governed by the same general principles applicable to other personal contracts.   May on Insurance, secs. 172, 173.

The general rule therefore applies, and I am not aware that it admits of any exception, that *the person to sue for a breach of a simple contract must be the person from whom the consideration for the promise moves.* Dicey on Parties 81; Chitty on Contracts 62.

To entitle a party to sue upon a promise, the promise need not, necessarily, in express terms, be addressed to the party entitled to sue.   In terms, it may be addressed to a party who, in law, shall be regarded as the agent of the party from whom the consideration moves, and the real party thus offering the inducement to the promise may bring the suit upon it in his own name, notwithstanding the promisor may have promised nothing to him directly.   "The consideration," it is said, "must proceed from the promisee; or, more strictly, the law considers the promise to be made to the person from whom the inducement to make it comes, or, in other words, from whom the consideration moves."

As the person to sue for the breach of an agreement must be the person with whom the agreement is made, or, in other words, to whom the defendant has made a promise, it follows that the person to sue for the breach of a simple contract must be the person " from whom the consideration moves," since, as already explained, he is the person to whom the law considers the promise to have been made.

A stipulates with X, that in consideration of a payment made by A to X, X shall build a house for M.   A made the payment, and so the consideration moved from him.   The person to sue X, therefore,

is not M, but A.   Here, the party entitled to sue is the party to whom the promise was directly made.

But, another example:  A, the plaintiff, had a claim against M for a debt of £70.   X, the defendant, undertook, in consideration of M's making a title for X, to pay A the £70.   A was held to have no right of action against X.   *Crowe* v. *Rogers*, 1 Str. 592 ; *Price* v. *Easton*, 4 B. & Ad. 434 ; *Butterfield* v. *Hartshorn*, 7 N. H. 351.   Here, the promise was made to A, but he had no right of action against X, because the consideration moved from M and not from A.   But the person really interested in the contract, and for whose benefit it is made, is the person with whom the law considers it to be made ;  " for though a person who has expressly contracted with A cannot treat the contract as not being with A, on the ground that another person, P, is really interested, yet when a contract is made *expressly with A*, either by word of mouth or in writing (provided the written instrument be not a deed), it is allowable for P, the person really interested, to show that the contract is, though on the face of it with A, yet in reality with him, and that he, therefore, has a right to sue upon it.

In short, the principle always holds good, as now settled and established, that no stranger to the consideration can take advantage of a contract, even though made for his benefit, and the consideration must move from the party entitled to sue upon it.   Dicey on Parties 81–85, 136, 137 ; Leake on Contracts 221, 313.

Even the cases of negotiable promissory notes and bills of exchange in which the holder may sue, although he was never a party to the original contract evidenced by the note or bill, are not really to be regarded as furnishing an exception to the general rule, since not only are such choses in action governed by the doctrine of equitable assignments which courts of law, from regard to public policy and in the interests of commerce, always recognize and protect,—Chitty on Con. 132,—but the possession of negotiable paper is regarded as *prima facie* evidence of consideration and title in the holder.   2 Pars. on Notes and Bills 438 ; Dicey on Parties 117.

Upon the familiar principles of estoppel, also, the maker of negotiable paper is estopped to question the capacity of the payee to indorse it.   *Drayton* v. *Dale*, 2 B. & C. 293 ; Big. on Est. 447.

" In some cases," says Prof. Parsons, " the actual promisee would be considered only the agent of the beneficiary, and in others the beneficiary would be regarded as the trustee of the party to whom the promise was directly made, and, as such trustee, might maintain an action in his own name.   In this country the right of a third party to bring an action on a promise made to another for his benefit seems to be somewhat more positively asserted, and we think it would be safe to consider this a prevailing rule with us; indeed, it has been held that such promise is to be deemed made to the third party, if adopted by him."   1 Pars. Con. 467, 468.   The cases cited by the learned author seem to fully sustain the propositions of the text.   *Carnegie* v. *Morrison*, 2 Met. 381 ; *Brewer* v. *Dyer*, 7 Cush. 337 ; Met. Con. 205–211.

This rule, of course, does not hold in the case of a deed or other specialty. The person to sue for the breach of a contract by deed is the person with whom the contract is expressed by the deed to be made, i. e., the covenantee.

A covenant is an agreement by deed. In every covenant, therefore, there is a covenantor who promises, and a covenantee to whom the promise is made. The person to bring an action for a breach of the covenant must be the covenantee. This rule holds good, because a covenant differs from a simple contract in this, that it is good without the existence of any consideration to induce the covenantor to enter into the covenant, whilst a simple contract is not valid if made without a consideration;—Dicey on Parties 101, 102,—where the following illustrations of the distinction in this respect between specialties and simple contracts, and of the general rules applicable to both, are given:

"X covenants with A to pay him £10. A can sue X if the covenant be broken, even though there were no consideration whatever to induce X to enter into the covenant. Suppose, again, that it were perfectly well known that the covenant was made with A simply as agent for M, and was intended for M's benefit: still, if it appeared on the face of the deed to be a covenant with A, an action for the breach of it would have to be brought by A, and could not be brought by M. But in the case of a simple contract, M, as the principal really interested, could sue." 1 Pars. Con. 468.

From all these considerations, it would seem to follow conclusively, that the plaintiff Chamberlain, and not White, is the proper person to sue for a breach of the defendants' contract. Although the promise is in terms to White, it is also in terms a promise to pay to Chamberlain; and in law, it is to be regarded as a promise directly to Chamberlain. The entire consideration moved from Chamberlain—White was, in fact, as well as in law, a total stranger to the contract—and, although White may ultimately derive a benefit from the contract, such a result can only be reached through the medium of the plaintiff, as his trustee, between whom and the defendants is the sole privity of contract.

None of the New Hampshire cases, I think, will be found to uphold a doctrine contrary to these views. The cases cited by the defendants are nearly all cases of assignments, and governed by the general principle stated in the outset, that in such a case the suit must be brought in the name of the original contracting party; whereas, in the case before us, the plaintiff is not an assignee, but is, in fact as well as in law, the original contracting party.

In *Nevins* v. *Ins. Co.*, 25 N. H. 28, the policy issued to Nevins was made payable in case of loss to Holland & Lane. It was held that Nevins properly brought the action, and not Holland & Lane, because, said PERLEY, J., "the contract of the defendants was with this plaintiff; * * he gave the premium note, and was the member of the corporation; * * Holland & Lane do not appear to have had any insurable interest in the goods," etc.

In *Rollins* v. *Ins. Co.*, 25 N. H. 200, it was held that under the pecu-

liar provisions of a by-law of the defendants, an assignee of a policy might maintain a suit in his own name; but it appearing that the policy was not in fact assigned, the action was properly brought in the name of the party originally insured; his contract with the defendants and his insurable interest remained; he was the member, and not his creditor, and it is to be inferred that he and no other gave the premium note.

In *Folsom* v. *Ins. Co.*, 30 N. H. 231, membership was regarded as the sole test of the right of action on the policy. It was held that "in the absence of any provision in the charter or by-laws of a mutual fire insurance company whereby the assignee becomes a member of the company, the action in case of loss must be in the name of the assured, with whom the contract was made." To the same effect is *Pierce* v. *Ins. Co.*, 50 N. H. 297.

In *Blanchard* v. *Ins. Co.*, 33 N. H. 9, the policy issued to Gates was made payable to Blanchard. EASTMAN, J., said,—"The application was the foundation of the insurance. This was made by Gates. He also gave the premium note and agreed to pay the assessments, and the policy was issued to him upon the faith of the application. There was no mutual contract between Blanchard and the company. He was not known to the defendants except through Gates. By the request and direction of Gates, and in consideration of the payments and undertakings made by him, the insurance was made payable, in case of loss, to Blanchard. There was no consideration paid by Blanchard, and no engagements entered into by him; and he was not a member of the company," &c.

There is another aspect of this case already alluded to which seems to indicate quite clearly the right of this plaintiff to maintain the suit in his own name for the recovery, not alone of his own, but also of White's interest in the policy. He obtained the insurance with White's consent for an amount greater than the value of his incumbrance upon the property insured. As to this surplus, therefore, he may be regarded as the agent and trustee of White; and it is well settled that an agent, may bring an action on a policy of insurance in his own name, upon the ground that the promise of the underwriter is made directly to the agent, and that he is a direct party to the contract. Paley on Agency 362; Story on Agency, sec. 394; *Barnes* v. *Union M. F. Ins. Co.*, 45 N. H. 21, 28.

It now remains to consider the effect of the vacating of the buildings insured, without notice to or the consent of the insurers.

The policy contained the following clause: "If the premises hereby insured become vacated by the removal of the owner or occupant, without immediate notice to the company and consent indorsed hereon, * * this policy shall be void."

Provisions of this character may be, very properly, annexed to a contract of insurance. They tend to protect the insurer against the results of negligence and fraud. A dishonest owner may be more

easily tempted to burn his own buildings during their non-occupation then when his goods are stored therein. The risk is usually regarded as greater, and a larger premium required to be paid in the case of buildings unoccupied, if the insurer consents to take such risk at all.

Still, since the provision, when applied as in this case to a state of things not existing at the date of the policy, tends to the subversion of the contract by an occurrence after its execution and partial performance, it is in the nature of a condition subsequent, and, like all such conditions, is not specially favored in law, and it will be construed and interpreted most strongly against the party imposing the condition.

The circumstances of this case call upon us to avoid the effect of this condition, if we may do so consistently with sound and established legal principles. The buildings remained occupied nearly a year after the date of the policy, and were then vacated, and so continued until their destruction, nearly nine months afterward.

Notice was not given because the party who obtained the insurance had no knowledge that the buildings were vacated, and the owner, who did not obtain the insurance, had no knowledge of the condition inserted in the policy; and "the buildings were not destroyed by reason of exposure to any risk which it was the object of the conditions in the policy to guard against."

The defendants have not claimed or suggested that the failure to give the prescribed notice arose from any wilful negligence or fault of anybody. It resulted from a condition of things which may well be regarded as a mistake on the part of the plaintiff; in other words, it arose from the plaintiff's honest reliance upon a mistaken condition of things. He knew that the buildings were occupied at the date of the policy, and had no suspicion that an abandonment of them was contemplated, nor that it had occurred before the period of their destruction.

The Gen. Stats., ch. 157, sec. 2, were intended to afford relief for cases of this kind; and we may properly seek for aid in the interpretation and construction of this condition, under the light of this enactment. The terms of the statute are,—" No policy of insurance shall be avoided by reason of any mistake or misrepresentation, unless it appears to have been intentionally and fraudulently made; but the party insuring, in any action brought against them on such policy, may show the facts, and the jury shall reduce the amount for which such party would otherwise be liable as much in proportion as the premium ought to have been increased if no mistake or misrepresentation had occurred."

The plaintiff's counsel, in argument, suggest that " it may be contended that the mistake or misrepresentation intended by the statute must be one occurring prior to or at the time of issuing the policy," and then the counsel go on to argue that " this is too narrow a construction, and that it may be one happening during the life of the policy, and referring to all its substantial conditions, limitations, or prohibitions, as well as to facts arising before the issuing of the policy. It would (the plaintiff contends) properly include a mistake or mis-

representation occurring in the assignment or transfer of the policy or of the property insured ; and this construction, he says, is especially proper in relation to policies issued by stock companies, where, as he understands, no formal or written application is made or signed.

These suggestions evoke no reply from the defendants, who waive and ignore entirely the statute referred to as applicable to the case. And yet the plaintiff's proposition and argument seem to me forcible, and such as to compel and require attentive consideration.

The terms of the statute are very broad : "No policy shall be avoided by reason of *any* mistake or misrepresentation, unless it appears to have been intentionally and fraudulently made."

Now the " misrepresentation " may refer solely to representations made in the original application for insurance, or to representations inducing an assignment of the policy ; but the " mistake " is not thus limited,—and, pray, why should it be ? The terms " mistake " and " misrepresentation " are not conjoined, and made identical or cumulative or aggregate ; they are separated by the disjunctive " or,"—and necessarily so, for they are totally unlike. A misrepresentation may be " intentionally and fraudulently made," but a mistake cannot be intentionally or fraudulently made. We hear of culpable negligence, but who ever heard of an intentional and fraudulent mistake ? Therefore the law properly and necessarily distinguishes between the two contingencies, and declares that the policy shall not be avoided by a misrepresentation " unless it appears to have been fraudulently made," nor " by reason of *any* mistake."

The policy and purpose of the law were, to promote honest and open fair dealing, to do equal justice, to protect the confidence reposed by the insured in those with whom he may contract, and (especially disclaiming any reference to this defendant company) to spring the traps " concealed in a mass of rubbish " before the unwary traveller shall have put his foot in them ; to prevent and prohibit, in short, the farce and fraud by which it has too often been found that the party apparently insured by the stipulations written upon one side of a piece of paper, was uninsured by the conditions involved in the " insurance typography" indorsed upon the other side of the same piece of paper.

I am unable to doubt that the statute was intended to apply, not merely to a mistake in matters antecedent to the execution of the contract of insurance, but to any and all matters affecting its continuing vitality.

The statute cannot be well said to interfere with the rights of parties to bind themselves by such stipulations and conditions as they may choose deliberately and fairly to make. As equity will generally afford relief to a party in jeopardy by reason of a mistake, so courts of law, I trust, will be reluctant to give a narrow and semi-effectual construction to a statute intended to aid the application of equitable principles. More than fifteen years before the date of this policy the legislature of 1855 enacted the substance of the law which is now expressed in sec. 2 of ch. 157, Gen. Stats., and every subsequent contract

of insurance made in this state has been made in view of and in sub-
ordination to this law, which has thus been practically incorporated into
the contract; for " the obligation of a contract," it is said, " consists
in its binding force on the party who makes it.   This depends upon
the laws in existence where it is made; these are necessarily referred
to in all contracts."   Cooley's Const. Lim. *285.   " The law, then,
which has this binding obligation, must govern and control the con-
tract in every shape in which it is intended to bear upon it, whether it
affects its validity, construction, or discharge.   It is, then, the munici-
pal law of the state, whether that be written or unwritten, which is
emphatically the law of the contract made within the state, and must
govern it throughout, whenever its performance is sought to be en-
forced."   Washington, J., in *Ogden* v. *Saunders*, 12 Wheat. 259.

Contracts relating to the traffic in spirituous liquors are very strin-
gently limited by force of state laws which bear upon them, but such
contracts are not within the category of those whose obligation is for-
bidden to be *impaired* by the Federal constitution.

A bankrupt or insolvent law of a state, which discharges both the
debtor and his future acquisitions of property, has been held not to be a
law impairing the obligation of contracts so far as respects debts con-
tracted subsequently to the passage of such law.   *Baldwin* v. *Hale*,
1 Black 231; *Sturgis* v. *Crowningshield*, 4 Wheat. 199; Potter's
Dwarris on Statutes, &c., 475, 476.   I am therefore of the opinion that
the statute should be applied to the correction of this mistake.

But aside from these considerations, I am not clear that a reasona-
ble interpretation of the condition will not relieve the plaintiff from
the forfeiture contemplated by its terms.   The condition makes the
policy void unless immediate notice of the vacating of the premises be
given; but the policy is not avoided *eo instanto*, by the act itself of
non-occupation.   There is a period of time after the occupation ceases
in which the policy still remains in force.

What is immediate notice?   In construing this contract, I think we
must hold, as matters of law, that " immediate" notice means *reason-
able* notice,—reasonable in all the circumstances of the case.   What
is reasonable, is a question for the jury; but, by the provisions of the
case, upon the facts transferred to this court, judgment is to be ren-
dered.

We have then this fact: the tenant moved out of the premises with-
out the knowledge of the insured, and the premises remained unoccu-
pied till their destruction, without the knowledge of the insured; and,
although several months thus elapsed, still, I think, as jurors and as
lawyers both, we should hold that notice to be reasonable, and there-
fore within the legal intendment of this condition which was given as
soon as the occasion for giving the notice was found to exist.   That
occasion never became apparent to the plaintiff (no laches are imputed
to him for his non-observation or ignorance of the occasion), and there-
fore the obligation to give the notice contemplated by the condition
was never, in fact, cast upon him.

The risk contemplated by vacating the buildings never, in fact, occurred in this case, since they " were not destroyed by exposure to any risk which it was the object of the conditions in the policy to guard against."

Nevertheless, since it is apparent that the defendants might not have insured the buildings upon the terms contracted for if they had known the buildings were unoccupied, and that upon notice of non-occupation they might have made an increased premium the condition of their consent to the continuance of the risk, I am of the opinion that the amount of their liability must be reduced " as much in proportion as the premium ought to have been increased if no mistake    *    *    had occurred."

We are unable, therefore, to render a judgment, as contemplated by the provisions of the case, and the cause must be sent to the circuit court for the determination of the question of damages only.

CUSHING, C. J., concurred.

LADD, J., dissenting. Upon the facts stated, I think judgment should be entered for the defendants. The policy upon which the suit is brought contains this condition : " If the premises hereby insured become vacated by the removal of the owner or occupant, without immediate notice to the company and consent endorsed, this policy shall be void." The case shows that the premises were vacated about nine months before the fire, and remained unoccupied until burnt; that no notice thereof was ever given to the company, and their assent to a continuance of the contract, under the changed condition of the property, was never obtained.

It is not pretended that there was anything illegal or unconscionable in the condition. No one will contend, I suppose, that such a stipulation is not both legal and proper, for the protection of the insurer against fraud, &c. It certainly formed an integral and essential part of the contract of insurance, at the time the policy was written.

Waiving for the present the inquiry whether a failure for nine months to give any notice whatever should be regarded as a failure to give " immediate " notice within the meaning of the policy, no question is left but that there was an entire failure by the plaintiff to perform this express and important stipulation in the contract. My brethren hold that the defendants are liable notwithstanding this failure of performance by the plaintiff, on the ground that his failure was the result of a mistake, against the ordinary and legitimate consequences of which he is protected by Gen. Stats., ch. 157, sec. 2. In this I have not been able to agree with them. The statute is as follows : "No policy of insurance shall be avoided by reason of any mistake or misrepresentation, unless it appears to have been intentionally and fraudulently made." The question is, What does this mean ? I confess it seems to me the meaning lies on the surface of the language used, and that the provision relates to the making of the contract and not to its performance. The

whole import and effect of the statute is to guard against the conse-
quences of a mistake; for a misrepresentation not intentionally
nor fraudulently made is simply a mistake, and nothing more.
To protect the assured against a forfeiture by reason of an innocent
mistake in making the contract of insurance accords with natural jus-
tice, and seems to be little more than introducing a familiar branch of
equitable relief; but to release him entirely from the performance of a
legal and wholesome condition in the contract, which he has entered
into fairly, with his eyes open, when there is no pretence of fraud or
mistake in the making of the contract, seems to me such an extraordi-
nary interference with the right which all men have to bind themselves
by any legal contract they may choose to make, that it is not to be in-
ferred except upon such evidence as leaves no other conclusion possible.

If I am wrong in supposing that the statute is so plain as not to
admit of interpretation, then we must look for the just rule of con-
struction to be applied in determining what it means.   It is said to be
the duty of courts so to construe statutes as not to violate fundamental
principles—Potter's Dwar. on Statutes 144; and, again, statutes are to
be interpreted with reference to the principles of the common law in
force at the time of their passage, except when the statute itself or the
courts have otherwise determined.   *Ib.* 145.   If there be doubt, and
one construction leads to manifest absurdity and injustice while the
other accords with natural equity and reason, the latter should obtain.
It seems to me contrary to fundamental principles, as it clearly is con-
trary to the principles of the common law, that one party to a legal
contract should be released from performance of a condition upon which
the liability of the other is expressly made to depend, and the other still
be held liable.   It certainly seems to me little less than annulling a
contract which the parties have made for themselves, and substituting
for it a different one such as somebody may suppose they ought to have
made; and this neither the legislature nor the court can do.

The alleged mistake here is, that the plaintiff did not know the
premises had been vacated.   Was it not his duty to have known that
fact?   Or, if he did not know it personally, ought he not to have pro-
vided for the fulfilment of his contract in this respect, as he easily
might, without his personal knowledge?   He deliberately bound him-
self, under penalty of forfeiting his policy, to inform the defendants
"immediately" in case the premises were vacated.   It was an indis-
pensable requisite to the literal performance of this stipulation that he
should inform himself of the fact he thus bound himself to communi-
cate.   If he failed to inform himself, and also failed to provide that
notice should be given without his personal knowledge, it seems to me
clear that he omitted the very thing he had bound himself to do; and
I am unable to discover anything to distinguish the case from any other
where a person, from negligence or forgetfulness, fails to discharge a
legal obligation which he has voluntarily assumed.   I cannot compre-
hend the ground upon which his failure can be said to have resulted
from mistake, in any legal or proper sense of that term.   The whole

amount of it seems to be, that he undertook to do a certain thing as a condition upon which his policy should continue in force, and then utterly neglected to take a single step in the direction of performing the condition.

The reasons for my dissent, then, are,—(1) that, admitting this to be a mistake, it does not come within the statute, inasmuch as the statute has relation to mistakes in the making of the contract, and not to a clear failure of performance like this; (2) that this cannot properly be called a mistake, but simply a negligent want of knowledge by the plaintiff of a fact which, by the express terms of the contract, he was bound to know and communicate to the defendants.

It is further suggested as not impossible, that a reasonable interpretation of the condition may relieve the plaintiff from the forfeiture contemplated by its terms; that the word "immediate," as there used, means substantially the same as within a reasonable time, and that a reasonable time had not elapsed during the nine months that intervened between the vacating of the house and the fire. It will not be contended, I suppose, but that we must give to the word "immediate," as used in this contract, its natural and commonly received signification and effect. The word is defined as "having nothing intervening, either as to place, time, or action; direct, proximate." Doubtless, in the common use of the language, "immediate" does not always mean without the intervention of an instant of time, or the smallest conceivable extent of space. In a certain sense, I should say the plaintiff here would be entitled to a reasonable time within which to give the notice; but the notice must still substantially answer the terms of the contract. It must be immediate, according to the idea conveyed by the word in the common language of the country. It seems to me impossible to hold that a failure to give the notice for a space of nine months was not a failure to give "immediate" notice, within any fair and reasonable construction of the policy.

*Case discharged.*