SLEEPER *v.* N. H. F. INSURANCE CO.          { Mar. 20, 1876.

*Insurance—Mistake—Construction of sec. 2, ch. 157, Gen. Stats.—Fraud.*

The defendants, a joint-stock insurance company, issued a policy insuring the plaintiff against loss or damage by fire to the amount of $600, on his house, shed, and barn. The policy contained a condition that it should be void if the premises should become vacated by the removal of the owner or occupant without immediate notice to the company and consent indorsed on the policy. The buildings were occupied by a tenant at the date of the policy, and continued to be thus occupied until July, 1871, when he left and went to Laconia, his family leaving a short time before he did. He settled for the rent until the following May. He had but little furniture, a portion of which he took away, and a portion was left in the house. When he left, it was his intention to return the next spring, or, if business should be dull at Laconia, to return earlier. The buildings were destroyed by fire October 30, 1871. He did not, before the fire, decide to return at any definite time. No person lived in the buildings after he left. Neither the plaintiff nor the defendants had any notice that the tenant had left the premises, until after the fire. The referee, to whom the action was sent, found, as a matter of fact, that the premises at the time of the fire were vacated within the meaning of the policy, but submitted to the court whether the question whether the buildings were vacated properly arises as a question of law upon the foregoing facts. *Held*, that upon such facts appearing, the buildings must be considered as vacated: *held*, also, that the failure to give notice was not a " mistake," within the intendment of the statute, which provides that " no policy shall be avoided by reason of any mistake or misrepresentation, unless it appears to have been inten-

---

* SMITH, J., did not sit.

tionally and fraudulently made; but the party insuring, in any action brought against them on such policy, may show the facts, and the jury shall reduce the amount for which such party would otherwise be liable as much in proportion as the premium ought to have been increased if no mistake or misrepresentation had occurred." *Chamberlain* v. *Insurance Co.*, 55 N. H. 249, on this point overruled.

The plaintiff made affidavit that the value of the property destroyed was $1,000, understanding that the value was materially less, although as much as the amount insured. His purpose was, to induce the company to make a speedy settlement, and to prevent controversy in regard to his being entitled to the full amount insured. *Held,* that this was such fraud as vitiated the policy by virtue of that provision which provided that "all fraud or attempt at fraud on the part of the insured shall cause a forfeiture of all claim under the policy."

FROM MERRIMACK CIRCUIT COURT.

ASSUMPSIT, upon a policy of insurance. The action was sent to a referee, who, at the April term, 1875, made his report as follows:

The property insured was situated in New Hampton. The plaintiff applied in Franklin to the defendants' agent; and, upon the representation of the plaintiff, the agent, who had no knowledge of the property except what the plaintiff told him, issued a policy, a copy of which is hereto annexed, and received six dollars for the premium thereon.

The plaintiff claimed at the trial that, in the absence of fraud, the valuation agreed upon by the parties and set forth in the policy was final and conclusive; but the referee ruled otherwise, and permitted the defendants to show that the premises insured were worth less than $600, and the plaintiff excepted.

The buildings were totally destroyed by fire October 30, 1871.

John H. Colfas occupied the premises at the time of the insurance, and until some time in July, 1871, when he left and went to Laconia, his family leaving a short time before he did. He had settled the rent for the premises until the following May. Colfas had but little furniture. A portion of what he had was taken away, and a portion was left in the house; but in what proportions did not appear. The wearing apparel of himself and family was carried away. When he left, it was his intention to return the next spring, or, if business should be dull at Laconia, to return earlier. He did not, before the fire, decide to return at any definite time. No person lived in the buildings after he left. Neither the plaintiff nor the defendants had any notice that Colfas had left the premises, until after the fire.

If the court shall be of the opinion that the question whether the premises were vacated, within the meaning of that clause in the policy which provides that "If the premises hereby insured become vacated by the removal of the owner or occupant, without immediate notice to the company and consent endorsed hereon · *   *   this policy shall be

void," properly arises as a question of law upon the foregoing facts, then I submit that question to the court; but if the court shall be of the opinion that it is incumbent on me to determine that question as a question of fact, then I find that, from the time Colfas left, the premises were vacated within the meaning of the policy.

I find that this change in the occupation of the premises constituted a material increase of the risk, and that, upon the facts proved showing said change of occupation, all of which are hereinbefore stated, the plaintiff ought to have paid an increased premium of $10, in order to make a reasonable compensation to the company for the increased liability of the buildings to be burned.

The only evidence tending to show that non-occupation of buildings materially increases the risk from fire was furnished by the secretary of the defendant company in answer to the following questions, which were ruled in, subject to the plaintiff's exceptions: "State, as an insurance man, whether or not there is any increased hazard by buildings being unoccupied?" "What is the increased hazard?"

I find that the value of the buildings at the time of the fire was $450, and that the plaintiff suffered damage by fire upon the property insured to the extent of $450.

November 4, 1871, the plaintiff furnished to the company a proof of loss, sworn to before a justice of the peace on the same day, in which, among other things, he stated that "a fire occurred on the 30th day of October, 1871, by which loss and damage was sustained to the property insured, as set forth in detail—see schedule A, hereto attached—to the amount of one thousand dollars; and I claim of your company six hundred dollars. The whole value of the property at the time of the fire was one thousand dollars, as set forth in schedule B, hereto attached." There was no schedule A attached. Schedule B was as follows: "House, shed, and barn attached, $1,000."

I find that, at the time of making oath to the foregoing affidavit, the plaintiff understood that his loss and damage upon the property insured was materially less than $1,000, and also understood that the value of said house, shed, and barn, at the time of the fire, was materially less than $1,000. I find it to be probable that the plaintiff, at the time of making said affidavit, believed his loss and damage upon the buildings insured to be as much as $600, and believed himself to be fairly entitled to recover of the company that sum,—and I therefore do not find that the purpose of the plaintiff in overstating in said affidavit his loss and damage, and the value of said buildings, was to obtain a greater sum than he considered the company justly liable to pay; but I do find that his purpose probably was, to induce the company to make a speedy settlement, and to prevent controversy in regard to his being entitled to the full amount of his insurance. I submit to the court the question whether, upon the foregoing facts relating to said affidavit, there was any fraud on the part of the plaintiff which vitiates his policy, by virtue of that clause in it which provides that "all fraud or attempt at fraud on the part

of the insured shall cause a forfeiture of all claim under this policy."
And I submit to the court the question whether, upon all the facts reported, the plaintiff is entitled to recover, and, if so, for what sum; or, whether the defendants are entitled to recover.

The questions thus raised were transferred to this court by FOSTER, C. J., and, upon the decision thereof, either party may elect a trial of disputed facts by a jury.

*Pike & Blodgett,* for the plaintiff.

*Barnard & Sanborn,* for the defendants.

SMITH, J.  By the written contract of insurance made between these parties, of which the policy is the evidence, it was agreed as follows: "If the premises hereby insured become vacated by the removal of the owner or occupant, without immediate notice to the company and consent endorsed hereon,    *    *    this policy shall be void."

These buildings were occupied by a tenant of the insured, and the rent had been settled for up to May, 1872.  The tenant left in July, 1871, and went to Laconia, his family having left a short time previous. The wearing apparel of the tenant and his family had all been taken away, and a portion of what little furniture they possessed.  He intended to return the next spring, or earlier, if business should be dull at Laconia.  No person lived in the buildings after he left.  The buildings were totally destroyed by fire October 30, 1871, up to which time he had not decided to return at any definite period.  Neither the plaintiff nor the defendants had any notice that the tenant had vacated the premises till after the fire.

The point is raised, whether, upon these facts, it is a question of law or a question of fact whether the premises had become vacant.  If it is a question of fact, then the referee finds that the premises were vacated within the meaning of the policy; if it is a question of law, I am of opinion that the premises were vacant.  The contract is to have a reasonable interpretation, according to the ordinary acceptation of the language used.  It is apparent the insurers intended to guard against the increased risk which inevitably affects buildings where no one is living or carrying on any business.  An unoccupied building invites a shelter to wanderers and evil disposed persons.  No one interested is present to watch or care for the property, or seasonably to extinguish the flames in case of fire; and for various reasons that might be enumerated, an unoccupied building is more exposed to destruction, to say nothing of the inducement a dishonest owner would have to turn it, if unprofitable, into money, when insured, by becoming a party to its destruction by fire.  If, then, the motive is to have some one present, occupying and dwelling in the buildings, and interested to preserve the roof that shelters his family or holds his household goods, that object would plainly be defeated by holding that he and his family may depart with all their possessions, save perhaps a few articles not needed for pres-

ent use, and still the premises be considered occupied.  It is true, that often a person may vacate his home with his family and a portion or all his possessions, for a temporary purpose, and yet his residence or home be considered, for the purpose of voting or being taxed, to be in the place thus temporarily abandoned.  But whether in law a person has temporarily or permanently abandoned his home, is altogether a different question from the one whether buildings are vacant when abandoned even for a temporary purpose.  I cannot say that I have any doubt that these buildings were vacant at the time they were burned, in the sense in which that term was used in the policy.

The question then arises, whether the neglect of the plaintiff, for the period of three months and upwards, to give notice to the defendants, and procure their consent to continue the policy, notwithstanding the buildings were unoccupied, is such a mistake as is covered by sec. 2, ch. 157, Gen. Stats.  It was decided by a majority of the judges who sat in the case of *Chamberlain* v. *Insurance Co.*, 55 N. H. 249, that it was such a mistake as the statute would, under the limitation therein expressed, relieve the insured from the total forfeiture of the policy.  To this view of the statute I am unable to assent.  Its provisions seem to me clearly to relate to mistakes or misrepresentations that occurred in the making of the contract, and not in its performance.  The history of legislation on this subject clearly authorizes this construction.

In 1853, the legislature enacted (ch. 1414 P. L.) that no insurance company should employ travelling agents to solicit or obtain applications for insurance, except in the town where the agent might reside, and then only unless he had been appointed by the directors of the company.  In 1854 (ch. 1549 P. L.), the act of 1853 was amended, so that three directors might appoint an agent.  In 1855 (ch. 1662 P. L.), the act of 1853 was amended, so as to allow the directors to appoint such agents as they should deem expedient, and should prescribe in what towns they might take applications, and should fix and limit the fees to be paid to them, with some other provisions not material to be mentioned ; and then, by sec. 6, enacted as follows:  " No policy issued by any insurance company, upon any application taken by any such agent, shall be void by reason of any error, mistake, or misrepresentation, unless it shall appear to have been intentionally and fraudulently made ; but said company may, in any action brought against them on said policy, file in offset any claim for damages which they shall have actually suffered thereby, and the jury may deduct from the claims of the plaintiff the amount of said damage as they shall find it."

In 1867, the legislature incorporated the substance of this section into sec. 2 of ch. 157 of the Gen. Stats., which is in the following terms :  " No policy of insurance shall be avoided by reason of any mistake or misrepresentation, unless it appears to have been intentionally and fraudulently made ; but the party insuring, in any action brought against them on such policy, may show the facts, and the jury shall reduce the amount for which such party would otherwise be liable as

much in proportion as the premium ought to have been increased if no mistake or misrepresentation had occurred."

The marginal reference shows that this section is a reënactment of sec. 6 of the act of 1855 ; and in the report of the commissioners to revise the statutes, made to the legislature, the section is marked " § " in the margin, showing that they intended to preserve the substance or sense of the corresponding section in the act of 1855.

It is well settled that a change of phraseology in the reënactment of a statute will not be construed to change its settled and obvious meaning, unless such intention appears. *Jewell* v. *Holderness*, 41 N. H. 161. What is there in the terms of the present statute that indicates any intention to change the construction of the act of 1855 ? Clearly nothing appears that expresses any such intention, and there is no such change in the terms of the present statute that authorizes such an inference.

It is a significant fact, that from 1855 to 1875, a period of twenty years, in no case that came before the court, so far as I am aware, where the insurer set up as a defence a material change in the risk occurring during the life of the policy, was it ever intimated by the court, or claimed by counsel, that the statute of 1855, or that of 1867, could afford the relief sought for.

*Shepherd* v. *Insurance Co.*, 38 N. H. 232, decided in 1859, was an action upon a policy of insurance to recover for loss by fire. It was claimed that after the execution of the contract, a barn, within six feet of the building insured, was occupied as a bowling-alley, and so continued up to the time of the fire, thereby increasing the risk. BELL, J., who delivered the opinion of the court, said (p. 240),—" The parties have a right to frame their contracts as they please in this respect, and they cannot complain if they find the stipulations to be inconvenient. Having contracted subject to this express condition, the company are not bound if the condition is shown to be broken. It is not admitted that the risk is increased, and the question of fact must be settled by the jury." There was no suggestion here that there had been a mistake, such as the statute would relieve against, although that would have been the most obvious way to the relief sought, if the construction of the statute now claimed had been suggested.

*Pierce* v. *Insurance Co.*, 50 N. H. 297, decided in 1870, was a case where the statute would certainly apply, if it could to any act of the insured after the contract was made; but the decision is based upon a waiver of notice of an assignment.

If the construction here contended for obtains, can any one suggest a case to which it may not be applied ? What contract could be made between the parties that could not be violated under the guise of correcting a mistake ? If an insurer expressly stipulates that he shall not be liable for the loss of buildings covered by his policy if they become vacant, where is the power to substitute a new contract to which he never assented ? True, he is held to contract with reference to statutes in force at the time, and it is not denied that such statutes enter into and become a part of the contract. But if he declines to

insure a vacant building, is there any statute that will compel him to do so? or, if there were such statute, is there any one bold enough to assert it could have any binding force? If, then, he contracts to insure his neighbor's building, at the same time stipulating that in case the building shall become vacant, unless notice is immediately given and his consent indorsed on the contract, it shall be void, where does the power come from to change this contract against his consent? From this statute, if from any source,—which is, that his contract shall not be avoided by reason of any mistake or misrepresentation, unless it appears to have been intentionally and fraudulently made—admitting for the moment that this may refer to mistakes or misrepresentations made after as well as before the execution of the contract,—how, using language in its ordinary and usual signification, can the act of the insured, in permitting the building to become vacant and his omission to notify the insurer thereof, be called a mistake? It is an act which he does or suffers to be done in direct and plain violation of his contract with the insurer. There is no element of a mistake about it. It does not alter the case that he did not know that his building had become vacant: it was his business to know it: it was his duty to see that the terms of the contract on his part were carried out. It is manifestly unjust to hold that he can, by his negligence, suffer the conditions of the contract, which were to be performed on his part, to be broken, and still claim to hold the other party to the performance of the contract, upon the ground that he has made a *mistake* in neglecting to fulfil the requirements of the contract on his part to be observed. As well might he claim that his books of account, securities, money, notes, bonds, deeds, jewelry, and numerous other articles which the policy stipulates are not insured, unless particularly mentioned, are covered by the policy, upon the ground that he made a mistake, and forgot to mention them at the time; and if the contract can be thus invaded under the guise of a mistake, there is no property, of however hazardous a nature it may be, which an insurer, however reluctant, may not, under the cloak of mistakes, be compelled to shoulder.

By cutting loose from the obvious intent of the legislature, we are at once launched upon a sea of difficulties in the adjudication of the great variety of questions that must inevitably arise under the guise of "mistakes" to be adjusted, and where the departure would end it would be difficult to predict. But confine the statute to mistakes and misrepresentations made at and before the time of the execution of the contract, as I have endeavored to show its framers intended, and its provisions can be enforced without impairing the obligations of contracts.

The referee further finds that the plaintiff, at the time he furnished the proofs of his loss, in which he made oath that the value of the property at the time of its destruction was $1,000, understood that the value was materially less than that sum, although as much as $600, the sum insured; and that his purpose probably was, to induce the company to make a speedy settlement, and to prevent controversy in regard to his being entitled to the full amount of his insur-

ance.   I agree with my brethren that this is such fraud on the part of the plaintiff as vitiates his policy by virtue of the provision that all fraud or attempt at fraud on the part of the assured shall cause a forfeiture of all claim under it.   It was an attempt on his part to deceive the insurers by a statement which he knew to be false, and done with the purpose of securing some advantage to himself at the expense of the defendants.

CUSHING C. J.   I do not see in the referee's report any evidence of any mistake which could possibly bring the case within the statute. Gen. Stats., ch. 157, sec. 2.  There is nothing which shows that the plaintiff misunderstood or mistook the terms or meaning of his policy.   It seems to be a clear case of the neglect of those ordinary precautions, for the purpose of fulfilling his contract, which every person is bound to use.   It does not appear to me, therefore, that the construction of that statute is involved at all in the case.

The referee has found that the plaintiff made an affidavit which was very largely wrong, and for a purpose which I cannot distinguish from an intention to induce the company to act differently, in regard to the settlement of his loss, from what they otherwise would have done.   If anything could be a fraud, within the meaning of the policy, I think this must have been one.

For both reasons, therefore,—because buildings were suffered to be vacated without notice, and because of the fraud,—I think the plaintiff cannot recover.

LADD, J.   It seems to me the specific facts reported by the referee, as to the removal of Colfas from the house insured, fully sustain the general finding, that, from the time he left, the premises were vacated within the meaning of the policy.   I think, when the occupant of a dwelling-house moves out with his family, taking part of his furniture and all the wearing apparel of the family, and makes his place of abode in another town, although he may have an intention of returning in eight or ten months, such dwelling-house, while thus deserted, must be regarded as unoccupied—that is, vacated—according to the natural and ordinarily received import of those terms.   It is the very situation against the hazards of which the defendants undertook to guard themselves, by an express stipulation and condition inserted in the contract upon which this action is founded.   I am also of opinion that a failure to give to the defendants notice that the premises were thus vacated from some time in July until October 30, three months or more, was a failure to give " immediate " notice, according to the fair and reasonable interpretation of the policy in this particular.   For this reason, I think the plaintiff is not entitled to recover upon the facts found by the referee.  *Chamberlain* v. *Insurance Co.*, 55 N. H. 249, 266.  It would seem probable, also, that the plaintiff must be debarred from recovering by his fraudulent misrepresentations as to the amount of the loss.

*Case discharged.*