Strafford, }
Dec., 1900. }

## GAHAGAN *v.* BOSTON & MAINE RAILROAD.

A highway traveler and a railroad company operating a train are under an equal obligation to exercise care to prevent a collision when approaching a grade crossing. In such case it is the duty of the company, which has the right of way, to give due notice of the train's approach, while the traveler nearing the point of conflicting use is bound to take such precautions as reasonable prudence dictates.

In an action for negligence, it is incumbent upon the plaintiff to produce evidence sufficient to justify the conclusion that he was in the exercise of due care in respect of the occurrence from which his injury arose; and he is not entitled to have his case submitted to a jury unless his freedom from fault is proved directly and affirmatively, or is established by inferences fairly deducible from the circumstances under which the injury is shown to have been sustained.

The negligent failure to give warning signals of an approaching train does not render a railroad company liable for injuries to a traveler which would have been prevented by the exercise of ordinary care on his part at the time of the accident.

A traveler who negligently places himself in front of an approaching train cannot recover for injuries resulting therefrom, in the absence of evidence sufficient to justify a finding that the railroad company's employees ought reasonably to have apprehended the dangerous situation, or could, when the danger became imminent, have avoided the accident by the exercise of ordinary care.

CASE, for negligence. The plaintiff was struck and injured by a train consisting of a locomotive with six freight cars attached, while he was attempting to cross the tracks in the railroad yard at Somersworth. The place of accident was not a highway, but was a crossing provided by the defendants for the use of pedestrians having business with the Great Falls Manufacturing Company, and was known as the counting-room crossing. In going to the counting-room, the crossing was reached by some steps descending from Main street. From the foot of the steps, which point is twenty-two feet from the nearest rails, there is an unobstructed view of the track for 400 feet to the south.

The plaintiff was a man about forty-three years of age, in the full possession of all his faculties. He had had occasion to use the crossing for years, and knew that engines and trains frequently passed over it. The day of the accident was bright and clear. Between noon and one o'clock P. M., the plaintiff passed from Main street down the steps and upon the track at a walk of from two to six miles an hour. At the same time, an engine with six cars following it was running backward from the south toward the crossing at the rate of from six to fifteen miles per hour. Just as the plaintiff stepped on the first rail, he was struck by the engine and injured.

Generally, the engine bell was rung, while the whistle was sometimes sounded for this crossing. The plaintiff knew it was usual to ring the engine bell. A danger whistle was sounded from the engine at the time or immediately before the plaintiff was struck, but there was evidence tending to prove that no other warning of the approach of the train was given on this occasion.

The engineer testified that when about 150 to 200 feet from the crossing he saw the plaintiff approaching the track at about two and a half miles an hour; that the train was running about six miles an hour; that he kept watch of the plaintiff until he got within a few feet of the track, when he whistled. The plaintiff testified that he did not look for an approaching train, because he expected to hear the bell or whistle if one was coming; that he did not remember whether he thought of that at the time; that he walked right along; that he did not listen for a train; that he made no effort to ascertain whether a train was coming or not;

that he walked at his usual rate of speed on to the track, continuing to walk until he was struck, and heard nothing until just as he was struck. The defendants' motion for a nonsuit was granted, subject to exception.

*Eastman & Hollis*, for the plaintiff.

*John Kivel* and *James A. Edgerly*, for the defendants.

Parsons, J.　The crossing upon which the plaintiff was injured was not a public highway, but was maintained by the defendants for the use which the plaintiff was attempting to make of it. He had the right to cross upon it. The defendants had also the right to use it for the passage of their trains. As each could not exercise the common right to the use of the crossing at the same moment of time without serious injury to one or both as the inevitable result, each party was bound to exercise care to prevent such attempt at the simultaneous exercise of their common right. As the right to the use was equal, an equal obligation to exercise care rested upon each. *Huntress* v. *Railroad*, 66 N. H. 185; *Continental Improvement Co.* v. *Stead*, 95 U. S. 161. But while the obligation to exercise care was equal, each was not bound to the same action to perform that obligation. Since due care is what a person of ordinary prudence would do under all the circumstances of the particular case, the conduct of such prudent person in the use of the crossing would be varied by the widely different conditions attendant upon the passage over it of a foot-traveler and a railroad train. *Hall* v. *Brown*, 54 N. H. 495, 499.

The precautions to be taken in each case are affected by the character of the other's use. If each party came to a full stop just before reaching the common way, the entire danger would be avoided. If such stop were equally easy or difficult in each case, prudence would require the same course of each, as is required in certain cases in the use of a common crossing by passenger trains on different railroads. P. S., c. 159, s. 10. But as the foot-passenger can as a practically invariable rule stop instantly and without inconvenience, while the train cannot as a rule stop except in a considerable distance, and then only with difficulty and inconvenience, it would be unreasonable to expect or require that when both are approaching the common point the train should stop and allow the foot-passenger to pass. The train has the precedence and the right of way. *Continental Improvement Co.* v. *Stead*, 95 U. S. 161. As the train cannot stop, it is the railroad's duty to give notice of its approach by warning signals, that the traveler upon the other way may stop and allow it to pass. This is so clear that the character of the required warning for highway cross-

ings has been defined by statute. P. S., *c.* 159, *s.* 6. On the other hand, the foot-passenger or traveler by other conveyance, whether drawn by horses, or propelled by the rider (as a bicycle), or by self-contained motive power, must take such precautions in approaching the point of conflicting use as reasonable prudence dictates to prevent the joint occupancy at the same time of the common way. Both parties being bound to exercise care, they are each guilty of negligence if they do not. For an injury due to the negligence of both, neither can recover of the other (*Nashua Iron and Steel Co.* v. *Railroad*, 62 N. H. 159); while the party without fault can recover of the other whose fault caused the collision from which the injury resulted. From the fact of injury no presumption arises as to the guilt or innocence of either party. The plaintiff is, therefore, in suits for injury upon a railroad crossing, as in all cases for negligence, bound to prove that his injury was not due to his own fault, but was caused by the fault of the defendant. *State* v. *Railroad*, 52 N. H. 528; *Lyman* v. *Railroad*, 66 N. H. 200, 202; *Roberts* v. *Railroad*, 69 N. H. 354, 355. Hence the plaintiff, to entitle him to submit his case to the jury, must produce evidence sufficient to render reasonable a finding that he was free from fault. Whether the plaintiff was, or not, without fault is in all cases a question of fact. But as facts may be established by inferences fairly deducible from circumstances proved in evidence, a plaintiff is not required to furnish direct, affirmative evidence of his exercise of care if such care can fairly be inferred from the whole case. *Hutchins* v. *Macomber*, 68 N. H. 473. "If there is any substantial evidence, the jury are to decide upon the balance of probabilities. They are to determine what amount or weight of competent evidence is sufficient or insufficient to convince their minds and determine the dispute between the parties. . . . But this does not authorize the jury to determine the question without evidence." *Deschenes* v. *Railroad*, 69 N. H. 285, 289; *Roberts* v. *Railroad*, 69 N. H. 354, 355. "The law demands proof and not mere surmises." *Bond* v. *Smith*, 113 N. Y. 378, 385.

In the present case the plaintiff's conduct is fully disclosed. As to his acts or omissions there is no dispute; the only question is whether the undisputed facts afford evidence of care. The plaintiff before attempting to cross the track, in order to fulfill the burden of care resting upon him, was bound "to take such precautions to learn of the approach of trains as men of ordinary prudence would take in like circumstances." *Smith* v. *Railroad, ante, p.* 53. What prudent men would or would not do in a given situation depends upon all the circumstances disclosed. "The railroad cannot be held to the same speed, or the traveler to the same conduct, in all cases. What would be proper conduct in one situation might

be improper in another. Hence no definite rule or test can be laid down, but each case must be governed by the facts appearing in it." *Roberts* v. *Railroad*, 69 N. H. 354. An exact definition of care and negligence, establishing what acts are careful and what acts or omissions are careless at all times, in all places, and under all circumstances, would be a great convenience in judicial administration; but unless the rule that due care is the care of the ordinarily prudent person under all the circumstances is abrogated, it can never be said logically that the mere presence or absence of certain evidentiary facts will always determine the question without reference to other facts appearing in particular cases. *Bass* v. *Street Railway*, ante, p. 170. Questions of fact that depend upon inferences of fact from other evidentiary facts proved are less likely to present questions about which reasonable men cannot differ than questions which can be proved by direct evidence. But cases involving from evidentiary facts an inference of fact like negligence or proximate cause, though from the nature of the question more generally for the jury, do not differ in principle from other cases upon the question whether there is anything for the jury. The proposition that such questions are generally for the jury is, as was said in *McGill* v. *Granite Co.*, ante, p. 125, "necessarily subject to the limitation affecting the submission of all questions of fact to the jury, that if on the evidence reasonable men can come to only one conclusion there is no question for their decision." *Deschenes* v. *Railroad*, 69 N. H. 285.

The question, therefore, is whether reasonable men could or might conclude that the plaintiff exercised due care to avoid the collision by which he was injured. In this case such conclusion would be unreasonable, because there is no evidence that the plaintiff exercised any care whatever. The plaintiff, in the noon hour of a bright, clear summer day, with nothing to obstruct his view of the track or the train, or to abstract his attention, or engross or stupefy his senses, compelled to act by no sudden emergency or danger, without mistake or misapprehension as to the speed of the train, deliberately walked upon a railroad crossing within a railroad yard, over which he knew trains and shifting engines were frequently passing, stepping almost directly in front of the train by which he was struck. The plaintiff was forty-three years of age, in full possession of his faculties. There is no evidence that he was either drunk or crazy. He took no precautions, as he was legally bound to do, to avoid the danger which he knew might arise upon the crossing at any moment. He testified that he did not make any effort to ascertain if the train was coming, and did not think it was. He neither stopped, looked, listened, or thought of the danger. If any one of these acts would have furnished

evidence of care, he did none of them.    There is no other evidence
from which care could be inferred.    He not only did nothing to
protect himself, but was in fact acting without attention to his
situation.    He was thoughtless and careless when his duty to the
railroad as well as to himself required him to be thoughtful and
careful.    It was said in *Smith* v. *Railroad, ante, p.* 53 : "It cer-
tainly must be as apparent to jurymen as to members of the court
that a person of average prudence will, under most circumstances,
look or listen for a train when about to pass over a grade crossing."
In the absence of such evidence of care and of any other evidence
tending to show care, it is clear there is nothing for the jury on
the question of the plaintiff's care.

In this case the plaintiff fails because, being bound to prove his
own care, he presents no evidence tending to prove the issue.    The
question is not taken from the jury because, as is sometimes said,
in the state of the proof the question of negligence is for the
court; but it is not submitted to the jury because upon the evidence
there is no disputed question of fact to be determined.    The plain-
tiff, having offered no evidence tending to prove his exercise of
care, was properly nonsuited unless a special rule exists in this
state for the trial of crossing cases relieving the plaintiff from the
obligation which exists in all other actions for negligence.    It is
claimed that under the law in this state "a case cannot be con-
ceived, short of deliberate suicide, where it is not open to a jury
to find in a level crossing accident that the plaintiff was in the ex-
ercise of due care"; meaning, as we understand the claim, that in
a crossing case the question of the plaintiff's care is always sub-
mitted to the jury, regardless of the character of the evidence.
While the cases have differed, as they necessarily must, in the evi-
dence presented, no case has been submitted to the jury without
evidence of facts from which it was considered care might reason-
ably be found.    If there be any in which this conclusion may
properly be subject to criticism, there are none in which it has been
suggested that the jury were authorized to find care without evi-
dence.

In *State* v. *Railroad,* 52 N. H. 528, the traveler drove upon the
track without looking for the train, but there was evidence tending
to prove that he understood before starting for the crossing that
the train by which he was injured had already passed.    The rea-
sonableness of this belief and his action thereunder, under all the
circumstances, left a question for the jury.    In *Huntress* v. *Rail-
road,* 66 N. H. 185, *Evans* v. *Railroad,* 66 N. H. 194, *Lyman* v.
*Railroad,* 66 N. H. 200, *Davis* v. *Railroad,* 68 N. H. 247, *Smith* v.
*Railroad, ante, p.* 53, the traveler was killed, and there was no
direct evidence of his conduct.    In all these cases there was evi-

dence upon which it was considered not unreasonable to infer the exercise of care, and that the traveler looked and listened. In *Nutter* v. *Railroad*, 60 N. H. 483, the party injured heard the approaching train, which was coming at an unlawful speed. The fact of his presumed reliance upon the defendants' knowledge of the speed law and obedience to it furnished evidence upon the question whether his want of vigilance in not observing the approaching train, *i. e.*, his failure to look for and see the train, constituted want of care and authorized the submission of the question to the jury. In *Folsom* v. *Railroad*, 68 N. H. 454, the plaintiff, without fault on his part, suddenly found himself in a dangerous position, whatever course he might pursue. Compelled to act at once, his error of judgment was not conclusive evidence of negligence. In one sense, the doctrine of *Huntress* v. *Railroad*, 66 N. H. 185, that in the absence of all evidence as to the fact the exercise of care may be inferred from the instinct of self-preservation, may be said to be peculiar to crossing cases, as it has not been presented in any other class of cases. This rule has no application in the present case, where all the facts appear in evidence.

In *Smith* v. *Railroad*, *Davis* v. *Railroad*, and *State* v. *Railroad*, exceptions to the refusal to instruct the jury as matter of law, in substance, that it is the duty of every one approaching along a highway to the crossing of a steam railroad to listen and look both ways along the railroad before going upon it, and that the failure of the traveler to look and listen was negligence precluding his recovery, were overruled, full general instructions upon the subject having been given. The refusal to declare certain acts or omissions negligence under all circumstances was an application of the law of negligence generally to this class of cases. *Ricker* v. *Hall*, 69 N. H. 592, 595; *Bass* v. *Street Railway*, *ante*, *p.* 170. As said by the supreme court of the United States of a similar request, such an instruction "states the duty of persons approaching a railroad with wagons and teams in a more absolute and unqualified form than we think admissible. It states such duty with the rigidity of a statute, making no allowance for modifying circumstances or for accidental diversion of the attention, to which the most careful and prudent are sometimes subject; and assuming, in effect, that the duty of avoiding collision lies wholly, or nearly so, on one side." *Continental Improvement Co.* v. *Stead*, 95 U. S. 161, 168; *Baltimore etc. R. R.* v. *Griffith*, 159 U. S. 603; *Texas etc. R'y* v. *Cody*, 166 U. S. 606. But it has not been suggested that in a case presenting no reason or excuse for failure to exercise such precautions,—in other words, presenting no evidence of such care, or of circumstances which could reasonably be found to constitute care in the absence of such precautions,—

an instruction of this sort would be error. In the present case, in the entire absence of any facts explaining or excusing the plaintiff's failure to take these or any precautions, the instruction requested in the cases cited would be a correct statement of the law of negligence applied to the facts in proof. Under such a statement of the law but one verdict could be rendered.

It is urged that the plaintiff relied upon the ringing of the bell, and that the failure to give the warning signals (of which there was some evidence which must here be taken to be true) excused him from the exercise of vigilance. Though the plaintiff testified that he did not look to see if a train was approaching because he expected to hear the whistle or bell if there was, it cannot be claimed that he was consciously at the time placing any reliance thereon, for he further testifies that he had no thought of a train coming and did not listen for the bell. As his counsel state in their brief, " There was no positive effort, no conscious ' harking ' or ' listening,' to ascertain if the train was coming." But assuming that it might be found as a fact that he did rely on the awakening of his consciousness by the performance of the railroad's duty of warning, the failure of the defendants to perform their duty did not release him from his. The obligation to use care was equally imposed upon each. If the defendants' negligence excused the plaintiff from his duty of care, the plaintiff's negligence with equal reason would excuse the defendants. If the plaintiff had the right to assume the defendants would perform their duty, and, relying thereon, approach the crossing without exercising care, the defendants had the right to assume that the plaintiff would perform his duty, and omit the warning of bell and whistle. The duty of care rested on each equally. If neither performed that duty both are in fault, and neither can recover of the other. The collision in this case resulted, it may be, because neither party performed their duty. If either had, there might and probably would have been no accident. The rights and liabilities of the parties consequent upon their acts resulting in the collision are not affected by the fact that subsequently one is plaintiff and the other defendant in a suit growing out of the collision. Their several responsibility is fixed at the time by their acts or failure to act. A suit by the engineer against Gahagan for personal injury resulting from the collision would present precisely the same legal question as that we now have. It would hardly be urged that the engineer was not guilty of contributory negligence in failing to ring the bell because he relied upon Gahagan's performance of his duty of stopping and allowing the train to go by. The negligence of neither is an excuse for concurrent want of care in the other, because for an injury resulting from the con-

current negligence of both neither can recover. *Nashua Iron and Steel Co.* v. *Railroad*, 62 N. H. 159, 163.

The rule is laid down in *Railroad Co.* v. *Houston*, 95 U. S. 697, 702, also a crossing case, as follows : " The failure of the engineer to sound the whistle or ring the bell, if such were the fact, did not relieve the deceased from the necessity of taking ordinary precautions for her safety. Negligence of the company's employees in these particulars was no excuse for negligence on her part." This rule, approved in *Northern Pacific R. R.* v. *Freeman*, 174 U. S. 379, 383, *Schofield* v. *Railway*, 114 U. S. 615, 618, and generally followed (Pierce R. R. 343, *Carter* v. *Railroad*, 72 Vt. 190), is not in contradiction with the conclusion in *Smith* v. *Railroad, supra*, where from the peculiar circumstances the giving of one signal and the omission of another tended to produce a trap for an attentive traveler who was approaching a crossing where the view of the track was obstructed; for the plaintiff's conscious attention to and reliance upon the defendants' performance of their duty is evidence upon the question of his care.

The case of *Mitchell* v. *Railroad*, 68 N. H. 96, which has been relied upon by the plaintiff, differs widely from the present. When Mitchell went upon the track he looked and saw the engine, which was not in motion. He knew the rule that it would not be started without ringing the bell, and that he was in plain sight of the fireman or engineer. He crossed at a place customarily used for that purpose to the defendants' knowledge. At the time of the accident he stepped back upon the track from a moving train upon an adjoining track, and his attention was distracted by the moving train in front of him. It was not a case of one going into danger without exercising care, but of one occupying a position which his observation told him was safe unless he was carelessly run upon.

It is not claimed that after the plaintiff stepped upon the track almost immediately in front of the approaching train the defendants could have prevented the injury, or that the employees in charge of the train, when the danger thus became imminent, did not do all that could be done to prevent the collision. At any time before this the plaintiff could have avoided the collision. There was no moment when the defendants could, while the plaintiff could not, have prevented the injury. The plaintiff's act in stepping upon the track, without precaution to ascertain whether he could safely do so, was the last act in point of time in the causation producing the injury. As there was no evidence upon which it could reasonably be found that the plaintiff's action in this respect was the exercise of care, he cannot recover unless upon the evidence some negligent act or omission of the defend-

ants' employees could be found to be the sole proximate cause of the injury. The plaintiff's negligence in carelessly exposing his property or himself to danger is not the proximate cause of resulting injury if the defendants could, while the plaintiff could not for any reason, including his own negligence, have avoided the results of the plaintiff's want of care. " The contributory negligence of the party injured will not defeat the action if it be shown that the defendants might by the exercise of reasonable care and prudence have avoided the consequences of the injured party's negligence." *Grand Trunk R'y* v. *Ives*, 144 U. S. 408, 429 ; *Inland etc. Co.* v. *Tolson*, 139 U. S. 551, 558 ; *Railroad Co.* v. *Kassen*, 49 Ohio St. 230. The law upon the ground of contributory negligence does not justify an avoidable injury to the person of one who carelessly exposes himself to danger. " Knowledge, or its equivalent, culpable ignorance, and ignorance without fault, . . . are circumstances by which, among others, the requisite measure of vigilance is determined." *Nashua Iron and Steel Co.* v. *Railroad*, 62 N. H. 159, 163. So in *Edgerly* v. *Railroad*, 67 N. H. 312, 315, the negligence of Edgerly in lying intoxicated upon the track did not prevent the recovery of damages for an injury which could have been avoided by care in the operation of the defendants' cars, and which Edgerly by reason of his intoxication could not avoid. See *State* v. *Railroad*, 52 N. H. 528 ; *Felch* v. *Railroad*, 66 N. H. 318.

The plaintiff's negligent occupation of the track did not authorize the defendants to run upon and injure him, if by care they could have avoided it. Ordinarily, the negligent act or omission which fails to avoid the consequences of the plaintiff's negligence is the last act in time in the series leading to the injury. Such was the case in the cases cited; the negligent occupation of the track by the plaintiffs preceded the negligence of the defendants in failing to observe and guard against the danger so produced. But as ordinary care may require vigilance to guard against a dangerous situation reasonably to be apprehended, as well as actually imminent, it cannot always follow that the last negligent act in point of time is necessarily the proximate cause of the injury. If the engineer knew or ought to have known that the plaintiff's negligence would place him upon the crossing when the train reached it, the engineer was equally bound to avoid the collision as if he saw the plaintiff actually on the track. The question is one of evidence merely. The mere fact that the person when first seen is on the track is not decisive. If a person on foot is seen crossing the track at such distance ahead that it could not reasonably be apprehended that the train would reach him in this position, the engineer would not be in fault for not preparing to avoid a danger not reasonably to be expected. In the present case there is evi-

dence that when the plaintiff was first seen by the engineer the collision could have been prevented. If the engineer knew or ought to have known then that the plaintiff would be upon the crossing when the train reached it, and could have avoided the collision, his failure to do so is the proximate cause of the injury.

As there was evidence the collision might then have been prevented by him, the sole remaining question is whether upon the evidence reasonable men might find the engineer ought then to have foreseen the plaintiff's negligence. The bare fact that the plaintiff was seen approaching the track is not sufficient to authorize such a finding. If it were, the rule heretofore laid down and found to be approved by the authorities and the reason of the case, that it is the duty of the highway traveler to stop and allow the train to pass, would be reversed. It would become the duty of the train to stop and wait for the person on foot to go by. This would be unreasonable, impracticable, and put an end to the modern system of rapid transportation demanded by the public, and to effectuate which railroads are authorized by the state.

" The company's servants may ordinarily presume that a person apparently of full age and capacity, who is walking on the track at some distance before the engine, will leave it in time to save himself from harm; or if approaching the track, that he will stop if it becomes dangerous for him to cross it. This presumption will not be justified under some circumstances, as when the person who is on the track appears to be intoxicated, asleep, or otherwise off his guard." Pierce R. R. 331; 2 Shearm. & Red. Neg., s. 483; *Chicago etc. R. R.* v. *Lee,* 68 Ill. 576, 581; *Terre Haute etc. R. R.* v. *Graham,* 46 Ind. 239, 245; *Lake Shore etc. R. R.* v. *Miller,* 25 Mich. 274, 278, 280; *Boyd* v. *Railway,* 105 Mo. 371, 381, 382. The presumption is founded upon the general principle of right acting and the instinct of self-preservation. *Huntress* v. *Railroad,* 66 N. H. 185; *Lyman* v. *Railroad,* 66 N. H. 200; 2 Thomp. Neg. 1601.

The case discloses no evidence apparent to the engineer taking the present case out of the rule. Without repeating all the facts which have been previously stated, it also appears that the plaintiff when seen was walking slowly, erect, with nothing peculiar about his appearance. This is the uncontradicted evidence from all the witnesses. One witness stated that he was walking very slowly — about six miles an hour; but in the face of all the evidence and this witness' own description of the speed, it could not reasonably be found that he was proceeding other than at a slow walk. There was some conflict as to whether his face was turned toward the train or not, and one witness expressed the opinion that there was nothing about his appearance to indicate whether he saw the train or not. The plaintiff was in the full possession of all his faculties; he knew he was approaching the crossing; he was neither

drunk nor crazy; there were no external appearances indicating such a condition contrary to the fact. Aside from the plaintiff's own statement and the fact of the subsequent collision, the case contains no evidence that the plaintiff, when seen by the engineer approaching the crossing, was not alert to the situation, or tending to produce a belief that he would voluntarily rush into danger without care. Until he stepped upon the track his only danger consisted in the fact of his mental obliviousness to his duty of taking care. So defining his danger, the claim of his counsel, that if the engineer knew the plaintiff's danger he could have avoided the injury and is in fault for not doing so, is sound; but to submit to the jury the question of fact whether the engineer ought to have known the *status* of the plaintiff's mind in season to have prevented the accident, not only in the absence of evidentiary facts tending to prove such knowledge but in the face of all the facts open only to a contrary inference, would be a violation of the familiar and elementary rule that in judicial trials facts are to be found upon evidence, not conjecture. *Deschenes* v. *Railroad*, 69 N. H. 285.

The evidence upon which counsel mainly rely, tending to show that when seen by the engineer Gahagan's face was not turned toward the train and that his appearance did not indicate whether he saw the train or not, does not tend to establish that he proposed to rush carelessly into known danger, or that he would go upon the track without care to ascertain if a train was approaching. That Gahagan knew the crossing, its danger, and his approach to it, was conceded. Hence, in the face of this admitted fact, although this evidence may have some tendency to prove the contrary, the jury could not find that Gahagan did not know he was approaching a place of danger, or that the engineer ought to have inferred a fact which it is conceded did not exist. As there is no evidence that the defendants ought to have known the plaintiff's danger in season to have avoided the results of his negligence, they cannot be found guilty of negligence for not doing so. The testimony of the engineer, called as a witness by the plaintiff, as to the conclusions he in fact formed, may be laid entirely out of the case; for the material question is not what he did understand, but what he ought to have inferred.

"It has become a truism in the law of negligence that each case depends upon its facts." *Wieland* v. *Canal Co.*, 167 N. Y. 19, 23. Applying to the facts as shown by the reserved case and the testimony, which has been fully reported, the fundamental principles of the law of negligence, no ground has been suggested or appears to us upon which it can be held that the order of nonsuit was error.

*Exception overruled.*

WALLACE and YOUNG, JJ., did not sit: the others concurred.