Belknap,  }
May 6, 1902. }

WALDRON, *Adm'x*, *v*. BOSTON & MAINE RAILROAD.

In an action against a railroad for causing the death of a traveler at a grade crossing, the plaintiff is bound to prove by competent evidence that the deceased was at the time of the accident in the exercise of ordinary care, or was not himself guilty of negligence which alone, or in conjunction with the defendants' negligence, was the proximate cause of the injury.

When there is direct evidence as to what a traveler killed by a train at a grade crossing did or omitted to do for his own protection, the evidence derived from the natural instinct of self-preservation in a position of danger cannot be used to prove that he exercised the same kind or degree of care as men in general under the same circumstances; and its only office in such case is to furnish a test by which to determine the reasonableness of his known conduct.

The failure of an engineer to slacken the speed of his train, for the purpose of avoiding collision with a traveler approaching a grade crossing, does not constitute actionable negligence, when the only inference to be reasonably drawn from the circumstances is that the traveler will exercise ordinary prudence and stop before reaching a place of danger.

CASE, for negligently causing the death of the plaintiff's husband at a railroad crossing in Laconia. Trial by jury. Transferred from the November term, 1901, of the superior court by *Peaslee*, J.

About 1,900 feet above the crossing the track comes around a curve at a point called "the mountain." From this point the grade is descending, and the trains are accustomed to coast past the crossing. The track curves to the east, and on that side of it just above the crossing there are thick bushes. A person standing midway between the rails at the crossing can see up the track 700 feet; four feet easterly from the east rail one can see 568 feet; nine feet from the rail, 484 feet; fourteen feet from the rail (the east edge of the planking), 400 feet; and twenty-eight feet from the middle of the track, 214 feet. There is a sharp rise coming up from an ice-house situated easterly of the track.

The plaintiff's evidence tended to prove the following facts: The decedent was forty-nine years old, in good health, and in full possession of his faculties. He was a board-sawyer by trade, and about a year before his death purchased a mill near the scene of the accident. During that year he had occasion to use this crossing frequently, and was familiar with it and its surroundings. He resided west of the track from June 1, 1901, and was accus-

tomed to go across it to get ice from the house on the east side two or three times a week. He went there on the day of the accident shortly after dinner, loaded the ice upon a wheelbarrow, and started to wheel it up the rise toward the crossing. The White Mountain express was eight minutes late. As it came around the mountain it was running from twenty-five to thirty-five miles an hour. The engine was not working steam, and both the engineer and fireman were on the lookout. By reason of his position on the outside of the curve, the engineer could not see the crossing as they approached it. The fireman could see it, and testified that he first observed the deceased just as he was coming upon the easterly edge of the planking and as soon as his presence was disclosed by the engine rounding the curve at a distance from the crossing estimated at from 175 to 200 feet, and from that time kept an eye on him; that the whistle for Weirs station was given as they passed the mountain, and that the witness rang the bell from there on; that he supposed Waldron would stop before he reached the track, and for that reason did not at once signal the engineer; that Waldron did not look toward the train or in any way show that he was conscious of its approach; that there was nothing unusual in his appearance, and when he got within some eight feet of the track the witness first thought there was likelihood of Waldron's going on the track and shouted " Whoa " to the engineer; that the engineer was leaning out of his window and did not hear the cry; that the witness repeated it, but it was then too late to avoid the accident. Eight witnesses testified that they were in positions where they heard the noise of the train, but heard no bell or whistle.

At the close of the plaintiff's evidence a verdict was directed for the defendants, subject to exception.

*Shannon & Young* and *E. A. & C. B. Hibbard*, for the plaintiff.

*Jewett & Plummer* and *Frank S. Streeter*, for the defendants.

WALKER, J. The plaintiff cannot recover unless it appears that her intestate was at the time of his injury in the exercise of ordinary care, or was not himself guilty of negligence which alone, or in conjunction with the defendant's negligence, was the proximate cause of his injury (*Nashua Iron and Steel Co.* v. *Railroad*, 62 N. H. 159); and the plaintiff is bound to prove this proposition by competent evidence. The fact alone that the injury occurred is not sufficient evidence of his care or freedom from negligence contributing to his injury. When there is no direct evidence bearing upon the question of the care exercised by the

deceased, and all that is known in reference to it is the fact that he was killed while attempting to cross a railroad track in front of an approaching train, the natural or instinctive disposition of men in general to avoid fatal injuries under such circumstances has been held to be evidence tending to show that the deceased did not carelessly and without due regard for his own safety expose himself to the inevitable fatality resulting from a collision with a swiftly moving locomotive. *Huntress* v. *Railroad*, 66 N. H. 185. If the great majority of men when approaching a railroad crossing take some precautions against being injured by passing trains,— which precautions are deemed reasonable,— and if in the absence of direct evidence this general custom of mankind may become evidence that the deceased in a given case used similar reasonable precautions to avoid danger, the fact remains that some men under similar circumstances are careless and negligent to the extent even of hazarding their lives upon the performance of foolhardy feats. It follows, therefore, that when it is known what the deceased did or omitted to do for his protection, evidence derived from the instinct, which most men possess, of securing their own safety in crossing a railroad track, could not be used to prove that he used the same degree or kind of care. Its only office would be to furnish a test by which to determine the reasonableness of his known acts — not to contradict them or minimize their importance.

In this case the plaintiff's evidence shows that the deceased apparently paid no attention to the approaching train. After he reached the easterly edge of the planking, fourteen feet from the rail, when the fireman first saw him, until the engine reached the crossing, he did not look toward the train or act as though he was conscious of its approach. He was in the full possession of his faculties. He must have known a train was liable to pass the crossing at that time. There is no evidence that he understood the train had passed, although it was eight minutes late. He resorted to no apparent means to ascertain his situation. If he had, his duty both to himself and to the railroad would have been instantly obvious. He failed to perform his duty and was guilty of negligence which contributed to his death. "He not only did nothing to protect himself, but was in fact acting without attention to his situation. He was thoughtless and careless when his duty to the railroad as well as to himself required him to be thoughtful and careful." *Gahagan* v. *Railroad*, 70 N. H. 441, 446. Upon this point reasonable men could not differ, and but one sustainable verdict could be rendered. Hence it was proper for the court to refuse to submit the question to the jury. *Carter* v. *Railroad*, 72 Vt. 190; *Butterfield* v. *Railroad*, 10 Allen 532; *Bush* v. *Railroad*, 62 Kan. 709; *Railroad Co.* v. *Houston*, 95 U. S. 697; 3 Elliott R. R., *s.* 1165.

But it is claimed that, notwithstanding the negligence of the deceased, there is evidence that after he was discovered approaching the track the engineer had time to stop the engine or to reduce its speed, so that the deceased might have crossed in safety. If the evidence would warrant that conclusion, and if it is assumed that the engineer saw him at the same time the fireman saw him, the question would be, whether the engineer, upon seeing the deceased walking toward the track, ought to have endeavored to stop the train to allow him to pass in front of it. The question relates to the legal duty of the engineer in view of the circumstances that were apparent to him. The general rule is that the engineer has the right of way as against a person approaching a crossing. In the absence of his knowledge of facts reasonably leading to the conclusion that the traveler intends to recklessly go onto the track and commit suicide, or that he is not in possession of ordinary intelligence, or is not governed by the ordinary instinct of self-preservation in the face of imminent danger, the engineer is not bound to stop his train and give the traveler the right of way. He is not chargeable with negligence in not assuming that the traveler will deliberately persist in walking onto the track, for the latter is not in danger until he reaches the track; common prudence would cause him to stop at that point, if not before; and without other evidence of his intention to hazard a passage across the track than is furnished by the mere fact that he is walking toward it, the engineer is justified in assuming that he will exercise common prudence and stop before reaching the place of danger. Otherwise, as is said in *Gahagan* v. *Railroad, supra*, at page 451, " the rule heretofore laid down and found to be approved by the authorities and the reason of the case, that it is the duty of the highway traveler to stop and allow the train to pass, would be reversed. It would become the duty of the train to stop and wait for the person on foot to go by. This would be unreasonable, impracticable, and put an end to the modern system of rapid transportation demanded by the public, and to effectuate which railroads are authorized by the state."

If the engineer knew or ought to have inferred that the deceased was deaf, or blind, or mentally unbalanced, and that in consequence of his infirmity he was liable to go upon the track without regard to the train, it may be true he should have reversed his engine and slackened its speed. But the deceased was not deaf, or blind, or mentally unbalanced; he must at least have heard the train when he was about to step upon the track, as other witnesses did; and it would be absurd to hold that the engineer was guilty of a violation of his duty to the deceased because he did not infer what was not a fact — that the latter was unable to

appreciate the danger of crossing the track.   He was fully capable of using the care which men in general would use under the same circumstances, and if he had observed that degree of care the accident would not have happened.   But from all the circumstances apparent to the engineer the only inference he could reasonably draw was that Waldron would exercise the care expected of men in his situation and stop before reaching the track.   The defendant cannot be held liable if the acts of its servant, the engineer, were the acts of a reasonably prudent and skillful man under the circumstances.   That they were of that character cannot be doubted.   They were such acts on the part of the engineer (still assuming he saw the traveler) as a reasonably prudent man in Waldron's situation, acting as Waldron did, would naturally expect; and his representative cannot complain of their occurrence.   His acts up to the time he stepped upon the track were entirely consistent with the idea that he would perform his plain duty under the circumstances and stop, both for his own protection and in recognition of the defendant's right of way.   Hence the engineer, if he had seen the deceased in time to have avoided the collision by reversing the engine, was under no obligation to do so, so far as the facts apparent to his observation indicated what his duty was.   That the man might walk onto the track without stopping is not sufficient to charge the engineer with knowledge that he would do so, or to make it his duty to stop the engine and ascertain the fact of the traveler's intention.   The management of the engine was not inconsistent with Waldron's performance of his duty as a reasonably prudent man — a duty with which he was chargeable upon all the facts apparent to the defendant's servants.   3 Elliott R. R., s. 1175; *Lake Shore etc. R. R.* v. *Miller*, 25 Mich. 274, 279; *Olson* v. *Railway*, 84 Minn. 258; *Boyd* v. *Railway*, 105 Mo. 371.   It is therefore immaterial whether the engineer in fact saw the deceased before the accident or in time to have avoided the collision; for the question is, not what he might have done, but what his duty to Waldron required, in view of the latter's apparent duty and ability to protect himself.   The case is not distinguishable in principle from *Gahagan* v. *Railroad, supra*.   This result renders it unnecessary to consider the question of the defendant's alleged negligence.

*Exception overruled.*

All concurred.