Coös, }
June 4, 1907. }

HARRIMAN v. MOORE <em>&</em> a.

Evidence that a highway of record became a public highway by reason of twenty years user is not objectionable on the ground that it is secondary proof.

Land thrown open or dedicated to the public will not become a public highway, however long it may be used, if the travel upon it is limited to travel to and from a toll-bridge or ferry; but if it is employed for general public travel, although not exclusively utilized for that purpose, it may become a public highway by twenty years user.

Evidence that a road was used for general public travel for more than twenty years, during which time the town kept it in repair, warrants a finding that it became a public highway by user.

One who places an obstruction in a highway cannot escape liability to a traveler injured by collision therewith, on the ground that the latter's horse was frightened and beyond control, if the fright of the animal ought reasonably to have been anticipated and some provision made for the contingency.

The plaintiff in an action for negligence is not required to prove that his injury was due solely to the fault of the defendant, if his own conduct in no way contributed thereto.

CASE, for personal injuries alleged to have been caused by the obstruction of a public highway in the town of Gorham, upon which the plaintiff was traveling with her daughter. Trial by jury and verdict for the plaintiff. Transferred from the December term, 1906, of the superior court by *Stone*, J.

The evidence tended to prove the following facts: The defendants were engaged in putting in a system of water-works under a contract with the town of Gorham, and had made excavations near the scene of the accident for the purpose of laying water-pipes. At the time of the accident the plaintiff's horse had become frightened at locomotives on the tracks of the Boston &

Maine Railroad in the vicinity, and had shied to the right. The plaintiff's daughter, who was driving, was unable to prevent the horse from shying, or from passing to the right of teams directly ahead. She guided the horse between the first team and a line of rocks lying on the right-hand side of the road, and probably would have safely passed the second team if the right-hand wheel of the wagon had not struck a large rock which laid nearer the center of the road than those previously passed, and which had been unlawfully left in the traveled part of the highway by the defendants. Up to the moment of the accident, the plaintiff's daughter was doing her best to manage the horse. There was evidence that the highway in question had been used for general public travel for about thirty-seven years, during which time the town had kept it in repair. It also appeared that at the time of the accident the plaintiff's horse had become frightened, was beyond control, and was actually running away.

At the close of the plaintiff's evidence the defendants moved for a nonsuit, on the ground that the plaintiff had failed to establish the existence of a legal highway at the point where the accident happened. The motion was denied, and the defendants excepted. The defendants also excepted to the denial of their request for the following instructions to the jury:

(1) The defendants were not obliged to guard against some extraordinary condition not foreseen, in consequence of which the road became too rough or too narrow to meet all the exigencies of the situation. If the highway was in suitable condition for ordinary travel conducted in the ordinary manner, the plaintiff cannot recover.

(2) If you find that the plaintiff's horse had taken fright at a locomotive, and at the time the accident occurred was running away, then the plaintiff cannot recover, although the alleged obstruction was within the limits of the road as traveled and used.

(3) It is necessary, in order to enable the plaintiff to recover, that the alleged obstruction in the highway should have been the sole cause of the accident, no other cause contributing thereto. If, before the accident, the horse from any cause became actually uncontrollable and was so when the accident occurred, the defendants are not liable, even though the rock in question may be found to have been within the limits of the traveled way.

(4) Momentary loss of control by the driver means no more than loss of control due to the shying or sudden starting of the horse. Therefore, in order for the plaintiff to recover on the theory that the horse was only momentarily out of her control, the jury must be satisfied that the horse did not practically pass beyond the control of the plaintiff, except for an instant. In

other words, unless you believe, upon all the evidence, that the driver could have immediately regained control of the horse but for the coming in contact with the rock, your verdict must be for the defendants.

*Jesse F. Libby*, for the plaintiff.

*Rich & Marble*, for the defendants.

BINGHAM, J. The defendants contend that the verdict should be set aside for the following reasons: (1) That the plaintiff was permitted to show that the highway in question was a public highway, by evidence of general public travel for twenty years or over, without first showing that it was not a highway of record; or if it was, that the record could not be produced; (2) that if the evidence was competent, it was not sufficient to warrant a finding of a public highway, because it did not appear that the public travel may not have included travel to and from a toll-bridge or ferry; and (3) that certain requested instructions were improperly denied.

1. " Highways are only such as are laid out in the mode prescribed therefor by statute, or as have been used as such for public travel thereon, other than travel to and from a toll-bridge or ferry, for twenty years." P. S., *c.* 67, *s.* 1.

Two methods, at least, are prescribed by our statutes for laying out highways. One is by petition and hearing before the selectmen of the town in which the proposed highway is situated. P. S., *c.* 67, *s.* 2; *State* v. *Morse*, 50 N. H. 9. The other is where the selectmen of a town on the Connecticut river, "acting in pursuance of a vote of the town, enter into a contract with the officers of the adjoining town or towns in Vermont and purchase the real estate, or the privilege, easement, or franchise of a bridge or ferry corporation, for the highway." *O'Neil* v. *Walpole, ante,* 197; P. S., *c.* 67, *ss.* 12, 13.

But from time immemorial we have had highways by user. Such highways are not established according to certain prescribed statutory methods, but arise from the uninterrupted use of the land for public travel and the continued recognition by the town and the landowner of the right to make such use; and the provisions of section 1, chapter 67, Public Statutes, relating to highways of this character, simply define what shall be competent and conclusive evidence of their existence.

In *Stevens* v. *Nashua*, 46 N. H. 192, 199, it is said: " When our statute required twenty years user to make a highway public, even though it might have been dedicated and accepted long before that

time expired, we think it was intended that such public use for that length of time should be sufficient, not only to be conclusive against the landowner, but against the town or city in which such highway is located. In case of a dedication, such user is conclusive evidence of an acceptance; and in case there is no evidence of any express dedication, yet such use for that time, if uninterrupted, continuous, and adverse, would be conclusive evidence of a right thus to use it as a public highway, both against the landowner and the city or town."

As we have highways of record and highways by user, each dependent upon distinct methods of proof, and as the same highway may in some instances be both a highway of record and by user, such fact does not deprive proof by the latter method of its original character and render it an attempt to prove a highway of record by secondary evidence.

2. The second contention of the defendants is evidently based upon an erroneous conception of the meaning of section 1, chapter 67, of the Public Statutes. This statute was first enacted in 1842. It then read as follows: " No highway that has not been laid out agreeably to statute law shall be deemed a public highway, unless the same has been used by the public for a term of time not less than twenty years; and no highway thrown open to the public, the use of which would not be necessary for public travel, excepting for the purposes of travel over a toll-bridge, shall ever be deemed a public highway, unless the same shall be laid out agreeably to statute law." R. S., c, 53, s. 7.

The language of the statute was not changed until the revision of 1867. It then assumed its present form. C. S., c. 57, s. 7; G. S., c. 68, s. 8. But from the marginal note appended to the section by the commissioners in their report to the legislature, it appears that while different language was made use of from that previously employed, it was not the intention to change the meaning of the law. Comm'rs' Rep. G. S., p. iv; Ib., c. 69, s. 8. This fact, taken in connection with the settled rule of construction that " the mere change of phraseology shall not be deemed a change of the law, unless such phraseology evidently purports an intention of the legislature to work a change " (Jewell v. Holderness, 41 N. H. 161, 163; Stewart v. Harriman, 56 N. H. 25, 27; Sleeper v. Insurance Co., 56 N. H. 401, 406), and there being nothing in the present statute indicating a change of intention so far as the effect of travel to and from a toll-bridge or ferry upon the establishment of a highway is concerned, it follows that the law is to be construed as meaning the same as when first enacted. This being so, it is apparent that the meaning of the statute is, that when land is thrown open or dedicated to the public, the way will not become a

public highway, however long it may be used, provided the travel upon it is limited to travel to and from a toll-bridge or ferry; and that if it is used for general public travel, although not exclusively for such travel, it may become a public highway by twenty years user.

The plaintiff's evidence tended to prove that the highway in question had been used for general public travel for more than twenty years, during which time the town had kept it in repair, and was sufficient to warrant the conclusion that it was a public highway by user. *Stevens* v. *Nashua, supra; Campton's Petition,* 41 N. H. 197, 198; *Willey* v. *Portsmouth,* 35 N. H. 303.

3. There was some evidence tending to prove that at the time of the accident the plaintiff's horse had become frightened, was beyond control, and was actually running away, and the defendants requested the court to charge the jury, in substance, that they were not bound to anticipate that horses of travelers upon the highway would become frightened and uncontrollable; that if the accident to the plaintiff occurred while her horse was beyond her control, in consequence of the defendants having narrowed up the highway with obstructions, that would not make them responsible; that they were only bound to anticipate and provide against accidents to travelers while their horses were within their control; and that unless the alleged obstructions in the highway were the sole cause of the accident, no other cause contributing thereto, the plaintiff could not recover.

Whether the defendants, in view of the above evidence, were entitled to have the first part of the request given to the jury depends upon the question whether there was any evidence from which it could have been found that the defendants should have anticipated that horses of travelers passing along the highway in the vicinity of the accident might become frightened and uncontrollable, and that their conduct in narrowing up the highway might render it dangerous. If there was such evidence, then the fact that the plaintiff's horse was beyond control without her fault would be a mere condition which the defendants should have provided against, and the question was for the jury. *Ela* v. *Cable Co.,* 71 N. H. 1, 3, 4; *Brown* v. *Railroad,* 73 N. H. 568, 573, and cases there cited.

It appeared in evidence that the highway in the vicinity of the accident was located beside the tracks of the Boston & Maine Railroad, upon which locomotives were liable to be, and that the plaintiff's horse took fright at locomotives upon those tracks. From this evidence, if from none other, it could have been found that the defendants should have anticipated that horses of travelers passing along there might become frightened and uncontrollable,

and that the defendants were negligent in not providing against such a contingency. This part of the request was properly denied, and the same is true of the portion that remains to be considered. It was not necessary, in order to render the defendants liable, that the jury should find that the plaintiff's injury was due solely to the defendants' negligence, if her conduct in no way contributed thereto. *Hanson* v. *Railway*, 73 N. H. 395; *Nashua etc. Co.* v. *Railroad*, 62 N. H. 159; *Winship* v. *Enfield*, 42 N. H. 197, 215; *Clark* v. *Barrington*, 41 N. H. 44, 50; *Norris* v. *Litchfield*, 35 N. H. 271.

*Exceptions overruled.*

PARSONS, C. J., did not sit: the others concurred.