Merrimack, }
May 7, 1914. }

## GEORGE C. GAGE *v.* BOSTON & MAINE RAILROAD.

## THOMAS E. SAWYER *v.* SAME.

The common-law obligation to exercise ordinary care may require a railroad company to maintain a flagman or gates and lights at a highway crossing, for the protection of travelers; but a failure to provide such safeguards is not conclusive proof of negligence, in the absence of a statute or other regulation imposing such duty.

Evidence that an automobile—operated by an experienced chauffeur, provided with powerful lights, driven at the rate of fourteen miles an hour, and equipped with brakes ordinarily capable of stopping the vehicle at that speed in twenty-six feet—crashed into a moving freight car which was visible at a distance of from thirty-five to fifty feet, does not warrant a finding that the proximate cause of such collision was the negligent failure of the railroad company to maintain a flagman or gates and lights at the highway crossing where it occurred.

The plaintiff in an action for negligence cannot urge in the supreme court a ground of liability not presented at the trial.

A finding of the superior court as to what issues were in fact tried and submitted to the jury is conclusive.

CASE, for negligence. The actions were tried together by jury and resulted in verdicts for the plaintiffs. In each case the defendant's motions for a nonsuit and the direction of a verdict in its favor were denied, subject to exception. Transferred from the April term, 1912, of the superior court by *Plummer*, J.

The plaintiffs hired one Spaulding to take them in his automobile from Franklin to Laconia and return. On the return trip they left Laconia about eleven o'clock in the evening. Shortly after mid-

night, at a crossing north of Tilton, the automobile collided with the fourteenth car of a slowly moving freight train of the defendant. There were no gates, lights, or crossing tender at the crossing. There was evidence that it was a dark night and somewhat foggy, which prevented the chauffeur from discovering the train upon the crossing until he was within about thirty-five feet of it. He testified that he was then going about fourteen miles per hour and that when running at that rate he could bring his machine to a stop in about twenty-seven feet; but for some reason he was not able to do so at the time of the collision.

*Martin & Howe* (*Mr. Howe* orally), for the plaintiffs.

*Streeter, Demond, Woodworth & Sulloway* and *William W. Thayer* (*Mr. Sulloway* orally), for the defendant.

WALKER, J. What duty did the defendant owe to the plaintiffs at the time of the collision which it failed to observe, and the breach of which was the proximate cause of the injuries they suffered? The burden was on them to prove that the defendant was negligent in its management of the train at the crossing and that its negligence in that respect was a proximate cause of the collision. At the trial the plaintiffs' contention was that the defendant's negligence could be found from its omission to provide gates with lights at the crossing, or in not having at that place a crossing tender to warn travelers that the crossing was occupied by the train. There is no contention that these precautions would be necessary in the daytime, or at any time when the occupation of the crossing by one or more cars would be visible to a traveler in time to allow him to stop before reaching the crossing. When cars are upon a crossing under such circumstances, the fact that they are there is a sufficient warning to the traveler upon the highway that he cannot occupy the crossing at the same time. No other signals or warnings are necessary or required, in the absence of a statute imposing such a duty upon the railroad. As there is no statute or municipal regulation requiring the defendant to provide lights at this crossing, the mere fact that there were none on the night of the accident does not prove the negligence of the defendant. It is merely evidence to be considered on the question of its reasonable conduct under the circumstances existing at the time of the accident. If in the exercise of due care and prudence with reference to travelers on the

highway who were approaching the crossing other precautions were reasonably necessary than such as were afforded by the presence of the train on the crossing, the absence of a light might be sufficient evidence of the defendant's negligence. Ordinary care in a given case might require that such a signal or an equivalent one should be exhibited as a warning of danger to travelers using the highway in a reasonable and proper way at the time of the accident. Whether such a warning should be given is not conclusively settled in the negative when it appears that there is no statute requiring lights at the crossing in question. The common-law obligation of the exercise of ordinary care by both parties when seeking to occupy a railroad crossing at the same time (*Gahagan* v. *Railroad,* 70 N. H. 441) still remains, which may require the exhibition of lights for the benefit of the plaintiff under the circumstances of the particular case. "It was the duty of the defendants to use ordinary care in the management of their locomotives and cars at or near the crossing, whether moving or stationary; and for any injury to the plaintiff resulting from such want of care, they were liable." *Lewis* v. *Railroad,* 60 N. H. 187, 189; *Eaton* v. *Railroad,* 129 Mass. 364; *Giacomo* v. *Railroad,* 196 Mass. 192; *Houghkirk* v. *Company,* 92 N. Y. 219; *Martin* v. *Railroad,* 45 N. Y. Supp. 925; *Northern Central Ry.* v. *Medairy,* 86 Md. 168; *Evansville etc. R. R.* v. *Clements,* 32 Ind. App. 659, 663; *Heddles* v. *Railway,* 74 Wis. 239, 255; *Grand Trunk Ry.* v. *Ives,* 144 U. S. 408.

The defendant's cars were rightfully occupying the crossing, and the trainmen were exercising due care so far as the management of the train in approaching and passing over the crossing is concerned. The plaintiffs were not injured by being run into by the defendant's locomotive, but by running into the defendant's freight car as it was slowly passing over the crossing. They were not injured by any mismanagement of the train. If it is conceded that the trainmen were chargeable with knowledge that automobiles were frequently driven over the crossing in the evening, were they also chargeable with knowledge that they were liable to be driven at such a rate of speed that they could not be stopped before reaching the crossing after the cars upon it became visible? Suppose instead of the place being the intersection of a highway and the railroad, it had been the crossing of two highways, and the plaintiffs had run into the side of a load of logs which were being transported over the crossing: the driver of the logging team would have the same duty to exercise care for the benefit of the plaintiffs that the trainmen had, and the

care he would be bound to exercise would be commensurate with the apparent danger to travelers on the other highway caused by his occupation of the crossing with a heavily loaded team. If the driver of the approaching automobile could see the obstruction in time to avoid colliding with it, reasonable men could not find that it was the duty of the driver of the team to have a lighted lantern on the side of his load toward the automobile, as a warning that the crossing was occupied, or to use some other extraordinary precaution to convey that information. In deciding what, if anything, he ought to do, he would be justified in assuming that the approaching traveler would not unnecessarily run into his load of logs. *Gahagan* v. *Railroad*, 70 N. H. 441; *Waldron* v. *Railroad*, 71 N. H. 362, 365; *Lord* v. *Railroad*, 74 N. H. 39.

For similar reasons, the trainmen in the case at bar were justified in acting upon the assumption that an automobile would not be unnecessarily driven into the side of their train. The automobile in which the plaintiffs were riding was equipped with headlights. They threw a light ahead so that the driver, as he testified, saw the train when he was about thirty-five feet from it. The plaintiffs testified that when they first saw the train it was fifty or more feet away. They were going at the rate of about fourteen miles an hour, and the driver testified that ordinarily he could stop the machine in about twenty-six feet when going at that rate. He also testified that as soon as he saw the train he did everything he could to stop, but without success until he collided with the car. He was an experienced motorman and testified for the plaintiffs. Upon this state of the facts there is no explanation or cause assigned why the automobile did not come to a stop before it reached the crossing. The driver saw the train in season to avoid a collision and resorted to all known means to bring the machine to a stop. He does not say that he miscalculated the distance to the train or the speed at which he was going. In other words, the plaintiffs' claim is that the defendant is liable, although the automobile for some reason did not respond to the application of the brakes as readily as under the circumstances it ordinarily would have done.

There was one other witness who testified as an expert chauffeur that going at the rate of sixteen miles an hour he might not be able to stop his machine inside of forty feet. This testimony, if true, is of very little account in this case, for it relates to a different machine than the one in question; whether it was a larger or smaller one does not appear. This fact would seem to be important, since it is

evident that the weight of a moving vehicle has some relation to its momentum. Besides, the rate of speed the witness was considering was sixteen miles an hour, while the plaintiffs, according to their testimony and that of the chauffeur, were going at the rate of fourteen miles an hour. What the witness could do with another and different machine going at a different speed is not very important, in view of the uncontradicted statement of the plaintiffs' chauffeur that his lights were of sufficient brilliancy to enable him to come to a stop before running into an obstruction like a freight car in the highway, or that going at the rate of fourteen miles an hour he could stop in about twenty-six feet.

In order to charge the defendant with negligence as the cause of the collision, upon the ground that the trainmen did not have the crossing lighted or take some other extraordinary precaution, it must be held that the jury could find that men of ordinary prudence in charge of the train at the time would have known that an automobile coming toward the crossing at the rate of fourteen miles an hour, in charge of an experienced driver, could not be stopped in going thirty-five feet, and would therefore crash into the train unless they used some special signals which could be seen more than thirty-five feet away. It is upon this ground that it is sought to charge the defendant with a duty it did not perform. But why the trainmen should be chargeable with the knowledge that an automobile could not be stopped within a given distance, when the expert chauffeur in charge of the machine said that it could, is not apparent. While they were bound to exercise ordinary care not to injure others seeking to use the crossing, their knowledge of the situation and its attendant danger, upon which their duty is based, is the knowledge of the ordinary man in similar circumstances. Certainly it does not include a knowledge as to the time within which an automobile can be stopped, not possessed by expert chauffeurs. If the trainmen had known that the plaintiffs were approaching at the rate of fourteen miles an hour and that they could see ahead thirty-five feet, they would have been justified, upon the plaintiffs' evidence, in assuming that they would come to a stop before reaching the crossing. Reasonable men could not find otherwise. The fact that the chauffeur was unable to stop the machine may have been due to some accident for which no one is responsible. The machinery for some undisclosed reason may not have responded to his efforts to control it as quickly as usual. In view of the statement in the plaintiffs' brief, that the chauffeur "understood that his

lights would enable him to discover any obstruction ahead of him in season to avoid a collision," it would be strange to say that the trainmen were in fault for not understanding that an automobile in charge of a competent driver, driven at the rate of fourteen miles an hour, and equipped with such headlights, was liable to run into the side of the train, and that it was incumbent on them as reasonable men to take some extraordinary precautions to prevent such a collision. Evidence of this character does not warrant the conclusion that the plaintiffs' injuries were due to the defendant's negligence.

If the defendant through its agents, the trainmen, in the reasonable management of its train, which was rightfully on the crossing, is not chargeable with knowledge that an automobile, bearing headlights of sufficient power to enable the chauffeur to avoid any obstruction in the road, was yet likely to crash into the train unless a danger signal or flagman with a lighted lantern was stationed in the highway by the side of the train, its omission to provide such safeguards for the plaintiffs' benefit was not the proximate cause of their injuries. "This case falls clearly within the rule that where an accident is not the reasonable, natural, and probable result of the situation which ought to have been foreseen by the defendant in the exercise of the degree of care exacted from a carrier of passengers, no liability follows." *Ayers* v. *Railway*, 156 N. Y. 104, 108.

"It was not enough to entitle the plaintiff to recover to show that his injury was the natural consequence of the negligent act or omission of the defendant, but it must have appeared that, under all the circumstances, it might reasonably have been expected that such an injury would result. A mere failure to ward against a result which could not have been reasonably expected is not negligence." *Davis* v. *Railway*, 93 Wis. 470, 482. In order to charge the defendant with negligence resulting in personal injury to the plaintiff, when both are present and acting at the time of the collision, it is essential for the plaintiff to prove that a man of ordinary prudence and foresight in the defendant's situation would have anticipated that injury might naturally result from his act or omission, to one in the plaintiffs' situation. *Stark* v. *Lancaster*, 57 N. H. 88; *Gilman* v. *Noyes*, 57 N. H. 627; *Searle* v. *Parke*, 68 N. H. 311; *McGill* v. *Company*, 70 N. H. 125, 129; *Gahagan* v. *Railroad*, 70 N. H. 441; *Waldron* v. *Railroad*, 71 N. H. 362; *Lord* v. *Railroad*, 74 N. H. 39; *Harriman* v. *Moore*, 74 N. H. 277; *Brown* v. *Kendall*, 6 Cush. 292,

296; *Hamilton* v. *Railway*, 163 Mass. 199; *Milwaukee etc. Ry.* v. *Kellogg*, 94 U. S. 469, 475.

While the question of proximate cause, including the question of the defendant's duty of anticipating or foreseeing that the result might naturally happen, is ordinarily one of fact for the jury, this rule "is necessarily subject to the limitation affecting the submission of all questions of fact to the jury: that if on the evidence reasonable men can come to only one conclusion, there is no question for their decision." *McGill* v. *Company*, 70 N. H. 125, 129. And when, as in this case, it cannot be said that the defendant was chargeable with knowledge that for some undisclosed cause an automobile was likely to run into its train on the crossing, the jury is not permitted to find that the defendant's act or omission to act was the cause of the plaintiffs' injuries. "From the fact of injury no presumption arises as to the guilt or innocence of either party." *Gahagan* v. *Railroad, supra*, 444.

In order to charge the defendant, it must be found from some substantial evidence that its servants in the exercise of ordinary care would have understood that they were maintaining at the crossing an obstruction which on account of the darkness was a dangerous obstruction to people riding in an automobile driven at a reasonable rate of speed and equipped with strong lights. To hold that such evidence exists in this case is to overturn the rule that a verdict based upon conjecture cannot stand (*Deschenes* v. *Railroad*, 69 N. H. 285; *Reynolds* v. *Fibre Co.*, 73 N. H. 126), or that a mere scintilla of evidence is not sufficient to sustain the burden of proof in cases for negligence. *Paine* v. *Railway*, 58 N. H. 611; *Free* v. *Buckingham*, 59 N. H. 219. The defendant's duty to have lights exposed for the benefit or protection of people using the highway in the manner the plaintiffs were using it is, to say the least, conjectural and visionary. It is based upon no substantial evidence.

The question whether, if the collision was due to the combined negligence of the defendant and the chauffeur whom the plaintiffs employed to transport them from Laconia to Franklin, the negligence of the latter could be imputed to the plaintiffs and precludes their recovery in this action (*Noyes* v. *Boscawen*, 64 N. H. 361) need not be considered; for if, under the circumstances, it cannot be found that the defendant was guilty of any breach of duty to the plaintiffs, it cannot be held responsible for their injuries. If it managed its train with reasonable care and prudence in view of all the circumstances it knew or ought to have known existed there at

the time of the collision, it was guilty of no negligence and cannot be charged for the consequences of the collision, whether the chauffeur was careful or negligent. If, as seems probable from the evidence, the collision was the result of some undiscovered defect in the mechanism of the automobile, the defendant is not responsible.

In their brief and at the argument, the plaintiffs took the position that the engineer was negligent in regard to the whistling signal for the crossing. This is a position not taken at the trial, and it is not now open to the plaintiffs to insist upon it. *Hill* v. *Railroad*, 72 N. H. 518, 520, 521; *Amoskeag Mfg. Co.* v. *Manchester*, 70 N. H. 200, 203; *Hinckley* v. *Franklin*, 69 N. H. 614; *Melvin* v. *Weare*, 56 N. H. 436, 441.

*Exceptions sustained.*

PARSONS, C. J., did not sit: YOUNG, J., dissented: the others concurred.

After the filing of the foregoing opinion on April 1, 1913, and while a motion for a rehearing was pending, the plaintiffs made a motion in the superior court for an amendment to show that the issue of liability on account of the defendant's failure to give the proper crossing signal by sounding the whistle as required by statute (P. S., *c.* 159, *s.* 6) was tried and submitted to the jury. The court after a hearing denied the motion, and the plaintiffs excepted. Upon this exception there was a hearing.

*Martin & Howe* (*Mr. Howe* orally), for the plaintiffs.

*Streeter, Demond, Woodworth & Sulloway*, for the defendant.

WALKER, J. The finding of the court denying the motion for an amendment of the case was amply supported by the evidence of what issues were in fact tried, and is conclusive. If there was evidence that the defendant did not give the statutory whistling signal, it was not submitted to the jury as a ground of liability and was not considered by them upon that issue. The order is,

*Exception overruled: motion for rehearing denied.*

PARSONS, C. J., and PLUMMER, J., did not sit: the others concurred.